UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Crim. No. 6:21-cr-00013-GFVT-HAI |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ROBERT TAYLOR, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendants Taylor and Barnett move to dismiss the indictment in this matter because every charge is premised on violations of the Controlled Substances Act. [R. 256.] They argue that the CSA is unconstitutional as applied in this matter and that the Indictment is insufficient. *Id.* The motion also asks the Court to take judicial notice of cited publications and websites. *Id.* at 5. Defendants Grenkoski, Herrell, and Misra have filed motions to join the Motion to Dismiss and Ms. Barnett's Reply in support. **[R. 273; R. 280; R. 283; R. 334; R. 338; R. 343.]** All motions to join will be **GRANTED** but for the reasons stated below, the Motion to Dismiss will be **DENIED**.

**I**

This case was initiated on March 4, 2021, when a federal grand jury returned an Indictment against eleven defendants. [R. 1.] The Indictment charged the Defendants with a total of twenty-seven counts including money laundering, health care and wire fraud, unlawful distribution of controlled substances, falsification of medical records, and various conspiracies. *Id.* Dr. Taylor was a Tennessee-licensed physician registered with the DEA who possessed a DATA waiver, which together allowed him to prescribe Schedule III controlled substances. *Id.* at 6. He founded EHC Medical Offices, which employed Defendants Barnett, Herrell,

Grenkoski, McFarlane, Bidawid, Cirelli, Misra, and Rasberry. *Id.* at 6-7. Each of those Defendants except Ms. Barnett, who was the operations manager, were Tennessee-licensed, DEA-registered, and DATA-waived physicians. *Id.* Defendants Powers and Bunch were also charged, both of whom are individuals residing in Kentucky. *Id.* at 7. The Government's overarching allegation is that the individuals running EHC were working together to distribute controlled substances such as buprenorphine and benzodiazepines outside of the scope of legitimate medical practice. *See id.* at 7-8. This resulted in or necessitated several other criminal acts and conspiracies, such as falsification of medical records, defrauding healthcare benefit programs including Medicare and Medicaid, and engaging in financial transactions using the proceeds of unlawful activity. *Id.* at 8-32. Defendants Taylor and Barnett, joined by Defendants Grenkoski, Herrell, and Misra, now move to dismiss the Indictment because each Count is premised on alleged violations of the CSA, which they claim is unconstitutional as applied to them, and because it is insufficiently specific. [R. 256.]

## II

### A

The CSA criminalizes distribution of controlled substances "except as authorized." 21 U.S.C. § 841(a). A controlled substance prescription is authorized if it is "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a). The Defendants argue that this framework suffers many constitutional infirmities when applied to medical practitioners, most of which are rooted in vagueness concerns. [R. 256 at 13-21.] A criminal statute is unconstitutionally vague if it "defines an offense in such a way that ordinary people cannot understand what is prohibited or if it encourages arbitrary or discriminatory enforcement." *United States v. Kernell*, 667 F.3d 746,

2

750 (6th Cir. 2012) (quoting *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001)). To succeed on a challenge for vagueness, a movant must demonstrate that the statute is vague as applied to his particular case, not merely that the "statute could be construed as vague in some hypothetical situation." *Id*.

1

First, the Defendants contend that "legitimate medical purpose" and "outside the course of professional practice" have no precise definition, so they could not have anticipated that their conduct violated the CSA. [R. 256 at 13-19.] Part of their argument relies on distinguishing their practice of prescribing opioids to treat opioid addiction, which is referred to as Medication Assisted Treatment, from prescribing them for pain management. *Id.* at 7-10. Congress delegated regulation of MAT to the Department of Health and Human Services, but the Defendants claim that HHS regulations do not clarify when MAT providers act illegitimately or outside the course of professional practice. *Id.* at 17; *see* 42 C.F.R. § 8.12. "Therefore . . . a reasonable physician practicing MAT [could not] have reasonably foreseen that he could be held criminally liable for dispensing the controlled substances that form the basis of his practice . . . when . . . authorized by the government." *Id.* at 17-18. The Government defends its Indictment, relying on multiple cases in which this Circuit and others rejected similar claims by medical professionals that the CSA is unconstitutionally vague. [R. 299 at 5.]

The Sixth Circuit "long ago held that 'the language in § 841(a)(1) and 21 C.F.R. § 1306.04(a) clearly defines the pharmacist's responsibilities that give rise to conduct that constitutes an unlawful distribution of a prescription drug.'" *United States v. Djari*, 609 Fed. App'x 320, 333 (6th Cir. 2015) (quoting *United States v. DeBoer*, 966 F.2d 1066, 1068-69 (6th Cir. 1992)). "The standard applicable to the writing of prescriptions for controlled substances is

not ambiguous." *Id.*; *see also United States v. Moore*, 423 U.S. 122, 142-43 (1975). Beyond affirming that the CSA is not unconstitutionally vague when applied to physicians, this ruling specifically rejected the Defendants' argument that the Rule of Lenity warrants a limited construction of the statute. *Id.* at 332-34 ("Because well-established law in this Circuit dictates that § 841(a)(1) and § 1306.04(a) are not ambiguous, we decline to employ the rule of lenity to reverse Darji's convictions.")

The Defendants recognize that similar vagueness challenges have repeatedly failed but contend that "if presented with Movants' challenge to the constitutionality of his prosecution, the [Supreme] Court would agree that the CSA does not criminalize doctor's trained judgment about addiction." *Id.* at 15-16. They claimed "we may soon find out because petitions for a writ of certiorari filed by physicians charged with violating the CSA are pending before the Supreme Court." *Id.* at 4. Two of those petitions were resolved—and the others were remanded in light of that decision—after the Motion to Dismiss was filed. *Ruan v. United States*, 142 S. Ct. 2370, 2375 (2022). The Supreme Court held that, when applied to medical professionals, "the [CSA's] 'knowingly or intentionally' *mens rea* applies to authorization" as well as distribution. *Id.* Accordingly, the Government must prove that a physician who was authorized to dispense a controlled substance knew that they issued an unauthorized prescription or intended to act in an unauthorized manner. *Id.* It is insufficient to merely show that the prescription was *in fact* not authorized. *Id.*

The petitioners in *Ruan* did not raise a vagueness challenge to the CSA as applied to medical professionals, so this specific issue has not been re-addressed as the Defendants hoped. But the Court implicitly re-affirmed the long-held notion that the CSA criminalizes conduct by

4

doctors, just as it does street dealers and drug traffickers, if they are acting outside the course of professional practice. The Court explained:

> Defendants who produce evidence that they are "authorized" to dispense controlled substances are often doctors dispensing drugs via prescription. We normally would not view such dispensations as inherently illegitimate; we expect, and indeed usually want, doctors to prescribe the medications that their patients need. In §841 prosecutions, then, it is the fact that the doctor issued an unauthorized prescription that renders his or her conduct wrongful, not the fact of the dispensation itself. In other words, authorization plays a "crucial" role in separating innocent conduct—and, in the case of doctors, socially beneficial conduct—from wrongful conduct.

*Id.* at 2377 (citing *United States v. X-Citement Video*, 513 U. S. 64, 73 (1994)). Further, the Court's ruling was intended, at least in part, to alleviate the Defendants' vagueness concerns. It recognized that "the regulatory language defining an authorized prescription is . . . 'ambiguous.'" *Id.* (citing *Gonzalez v. Oregon*, 546 U.S. 243, 258 (2006)). By imposing "a stronger scienter requirement," the Court "diminish[ed] the risk of 'overdeterrence,' *i.e.*, punishing acceptable and beneficial conduct that lies close to, but on the permissible side of, the criminal line." *Id.* at 2378 (citing *United States v. United States Gypsum Co.*, 438 U.S. 422, 441 (1978)). *Ruan* weakens, rather than strengthens, the Defendants' argument that they are being prosecuted for conduct they could not have anticipated would violate the CSA because it requires the Government to prove that they conspired to issue prescriptions which they knew were unauthorized.

### 2

The Defendants also attempt to distinguish their CSA prosecution because they were using MAT to treat patients with opioid addictions, not prescribing opioids for pain management. [R. 256 at 7-9.] The Government argues this distinction is unfounded. *Id.* at 6. The Defendants cite to no binding authority finding a meaningful difference in the prescription types. *Id.*

Therefore, the Government contends there is no reason not to apply the significant amount of precedent upholding CSA charges like the one at hand to physicians giving MAT. *Id.* at 6-7.

The Court agrees with the Government that there is no reason to depart from this well-established precedent simply because the Defendants were practicing MAT rather than pain management. Physicians in both circumstances are responsible for dispensing controlled substances for a "legitimate medical purpose" within "the course of professional practice." 21 C.F.R. § 1306.04(a). As established above, courts have long approved of this framework and the Supreme Court re-affirmed it just weeks ago. *See Ruan*, 142 S. Ct. at 2375; *Djari*, 609 Fed. App'x at 333; *DeBoer*, 966 F.2d at 1069. The crux of the Defendants' argument is that "the CSA does not criminalize doctor's [*sic*] trained judgment about addiction treatment." [R. 256 at 15-16.] They are correct so long as a physician's "trained judgment" reflects a "legitimate medical purpose" and is within "the course of professional practice." But if not, their practice violates the CSA, even if they are engaging in MAT.

**3**

The Defendants also allege their prosecution is based on an impermissibly vague application of the CSA because the Sixth Circuit is "uncertain about required elements of [the] offense." [R. 256 at 20.] The Pattern Jury Instructions recommend district courts use a two-element approach to instruct juries on a charge of conspiracy to violate the drug laws ((1) existence of an agreement to violate the drug laws, and (2) the defendant knowingly joined the agreement). Sixth Circuit Pattern Criminal Jury Instruction 14.05(2) (Oct. 1, 2021). But in *United States v. Potter*, the Sixth Circuit noted that many district courts use a three-element formulation ((1) agreement to violate the drug laws, (2) the defendant's knowledge and intent to join the agreement, and (3) the defendant's participation in the agreement). 927 F.3d 446, 453

6

(6th Cir. 2019). The Defendants argue "if courts construing the statute are uncertain about required elements of an offense, no ordinary person or medical practitioner would have sufficient notice that his or her conduct had strayed from differing professional judgments." [R. 256 at 20.] But differing jury instructions do not mean the courts are "uncertain about the required elements." In fact, *Potter* holds that the difference is merely semantic. 927 F.3d at 453. Different approaches within the Circuit to inform juries of the required elements do not make the CSA unconstitutionally vague as applied to the Defendants.[1]

**B**

The "additional constitutional defects" asserted by the Defendants are similarly unavailing. They first argue that the controlling regulations' vagueness impermissibly delegates regulation to federal law enforcement, in contravention of Congress's delegation of MAT regulation to the Department of Health and Human Services. [R. 256 at 22-24; 21 U.S.C. § 823(g)(2)(H)(i).] Effectively, they believe that law enforcement, not HHS, is determining what is and is not appropriate medical practice through its methods of investigation and prosecution. But since 1975, the Supreme Court has approved of the CSA's general structure: prohibiting distribution of controlled substances "except as authorized," and defining "authorization" as prescriptions "for a legitimate medical purpose . . . in the usual course of [the physician's] professional practice." *Moore*, 423 U.S. at 136 n.12; *see also Gonzales v. Oregon*, 546 U.S. 243, 250 (2006). There is no indication that Congress's delegation to HHS of establishing standards for qualifying physicians to provide MAT changes that general structure. *See* 21 U.S.C. § 823(g); 42 U.S.C. § 290bb-2a. In fact, this delegation undercuts the Defendants' assertion that

---

[1] The Defendants also briefly mentioned that the jury instructions state that the Defendant's *mens rea* as to the drug amount is irrelevant, which they contend conflicts with *Alleyne v. United States*. [R. 256 at 20 (citing 133 S. Ct. 2151 (2013)).] But controlling precedent rejected this argument and the Defendants do not elaborate further. *United States v. Dado*, 759 F.3d 550, 570-71 (6th Cir. 2014).

7

the statutory and regulatory scheme is unconstitutionally vague. Treatment of narcotics addicts is the "one area in which Congress set general, uniform standards of medical practice." *Gonzales*, 546 U.S. at 271 (citing 42 U.S.C. § 290bb-2a). Therefore, federal law enforcement has more, rather than less, guidance when prosecuting unauthorized distribution of controlled substances within the MAT context because the regulations specify when a prescription is authorized. The prosecution of this matter is not an unconstitutional delegation of MAT regulation to federal law enforcement.

Similarly, the Defendants' argument that their prosecution impermissibly encroaches on state regulation of medical practice is precluded by considerable precedent. *Gonzales*, which they rely on in support, established that the CSA "regulates medical practice insofar as it bars doctors from using their prescription-writing powers as a means to engage in illicit drug dealing and trafficking as conventionally understood." [R. 256 at 22 (citing 546 U.S. at 269-70).] "Beyond this, however, the statute manifests no intent to regulate the practice of medicine generally." *Gonzales*, 546 U.S. at 270. The CSA, even as applied to medical professionals engaging in MAT, proscribes illicit drug dealing. The Government alleges that the Defendants conspired to engage in illicit drug dealing by unlawfully prescribing controlled substances. It is not attempting to criminalize the Defendants' "differing opinions on the standard of care." [R. 256 at 24.] Whether the Defendants' conduct did arise to the level of a conspiracy to illicitly deal drugs is to be determined at trial. But the Government does not infringe on state regulation of medical practice when it indicts physicians for unlawful prescribing, even those who are treating opioid use disorders, when it believes the prescriptions constitute illicit drug dealing.

## C

### 1

The Defendants also raise numerous complaints with the Indictment itself. They believe it "inappropriately twists the professional relationship between Movants and their colleagues into a conspiracy without an adequate explanation for doing so." [R. 256 at 20.] They argue Count I (the drug conspiracy charge) is insufficient because it does not allege (1) that the Defendants participated in a drug conspiracy, (2) that they "knowingly and voluntarily joined the conspiracy," (3) that they agreed to commit the object of the conspiracy, (4) that they knew the substance was a controlled substance, (5) any specific controlled substances, or (6) that they committed a direct CSA violation. *Id.* The Government defends the Indictment by citing a 2020 Sixth Circuit case finding a "nearly identical" one was "constitutionally sufficient." [R. 299 at 10 (citing *United States v. McReynolds*, 964 F.3d 555, 561–62 (6th Cir. 2020)).]

An Indictment must (1) contain the elements of the charged offense, (2) adequately notify the defendant of the charges, and (3) protect the defendant against Double Jeopardy. *Valentine v. Konteh*, 395 F.3d 626, 631 (6th Cir. 2005). Count I alleges the Defendants:

> did conspire together and with others to knowingly and intentionally distribute and dispense controlled substances, to include buprenorphine, a Schedule III controlled substance, and certain benzodiazepines, including clonazepam, Schedule IV controlled substances, pursuant to prescriptions that were not issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his or her professional practice in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846.

[R. 1 at 8.] The majority of the asserted insufficiencies are not present. By stating that the Defendants "did conspire to" violate the drug laws, Count I alleges that the Defendants participated in a drug conspiracy and agreed to commit its object. *Id.* It also states the Defendants agreed to "knowingly and intentionally distribute and dispense controlled

substances," so it alleges they knew the substances were controlled. *Id.* Contrary to the Defendants' assertion, Count I names specific controlled substances: buprenorphine and benzodiazepines including clonazepam. *Id.* Finally, their belief that the Indictment is flawed because they are not charged with a direct CSA violation is not supported by the law. One does not need to be guilty of the object of the conspiracy to be guilty of the conspiracy itself, so a defendant can be charged with conspiracy alone. *United States v. Colon*, 268 F.3d 367, 376 (6th Cir, 2001) ("It is possible to conspire to commit these drug offenses . . . without actually committing the offense[s] themselves; thus it is not impossible to commit the greater offense (conspiracy) without committing the suggested lesser offenses.")

Just one of the challenges to the Indictment has merit: that it insufficiently alleges that the Defendants knowingly and intentionally joined the conspiracy. The essential elements of an § 846 conspiracy are: (1) the existence of an agreement to violate the drug laws and (2) the defendant knowingly and voluntarily joined the conspiracy. Sixth Circuit Pattern Criminal Jury Instruction 14.05(2) (Oct. 1, 2021). Therefore, this charge lacks precision because the "knowingly and intentionally" qualifier should have been placed earlier in the charge so that it clearly applied to both "conspire" and "distribute and dispense." In fact, the Indictment in the case the Government frames as "nearly identical" to the one at hand stated that the Defendants "knowingly conspired and agreed together." [R. 299 at 10 (citing *United States v. McReynolds*, 964 F.3d 555, 561 (6th Cir. 2020).]

But "even if the . . . language in the . . . indictment is somewhat imprecise, this does not render the . . . indictment insufficient." *United States v. Edington*, 526 Fed. App'x 584, 588 (6th Cir. 2013). "Convictions are no longer reversed because of minor and technical deficiencies which did not prejudice the accused ." *Smith v. United States*, 360 U.S. 1, 9 (1959). "Courts

utilize a commonsense construction in determining whether an indictment sufficiently informs a defendant of an offense." *Allen v. United States*, 867 F.2d 969, 971 (6th Cir. 1989). The Indictment as a whole clearly informs the Defendants that the conspiracy charge is based on EHC's practice of having physicians prescribe controlled substances "in quantities and combinations that were not medically necessary and . . . without sufficient medical examination or medical decision-making." [R. 1 at 14.] The Seventh's Circuit's analysis of comparable language is instructive. *United States v. Jones*, 754 Fed. App'x 452, 456 (7th Cir. 2018). It stated, "[t]rue, the indictment did not explicitly accuse Jones of 'knowingly and intentionally' conspiring. The verb 'conspire,' however, necessarily entails an intent to act." *Id.* The Court agrees that use of the term "conspire" in the charge encapsulates that the Defendants knowingly joined the conspiracy.

The ultimate question is whether the Indictment is sufficient to inform the Defendants of the charges against them. *See United States v. Cor-Bon Custom Bullet Co.*, 287 F.3d 576, 580 (6th Cir. 2002). Count I clearly charges a conspiracy to violate the drug laws by citing both 21 U.S.C. §§ 841(a) and 846. *McReynolds*, 964 F.3d at 562 (citing *Williams v. Haviland*, 467 F.3d 527, 535-36 (6th Cir. 2006)). When reading the Indictment as a whole, it provides that the Defendants were working together to issue prescriptions for controlled substances without following proper medical procedures. [*See, e.g.* R. 1 at 14.] Accordingly, the Indictment sufficiently informed the Defendants of the charge and dismissal is not warranted.

**2**

Because *Ruan* was decided during the briefing period on this motion, the Defendants presented a new argument in their Reply that the Indictment is insufficient because it does not allege that the Defendants knew and intended to issue unauthorized prescriptions. [R. 324 at 6-

11

7.] They also argue that the Government's description of *Ruan* in its Response incorrectly states the regulation defining authorization is an objective standard. *Id.* at 7. The Defendants are correct that the objective standard established in 21 CFR § 1306.04(a) "cannot be divorced from the subjective *mens rea*" established in *Ruan. Id.* at 7. But the Government is not contending there is no subjective standard in addition to the objective standard governing authorization. The Government correctly recognizes that "authorization" is an objective determination governed by the controlling regulations but that post-*Ruan*, there is an additional subjective element that must also be satisfied (that the Defendant "knowingly and intentionally" distributed controlled substances without authorization). [R. 299 at 8-9.]

Count I alleges the Defendants "did conspire together and with others to knowingly and intentionally distribute and dispense controlled substances . . . pursuant to prescriptions that were not issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his or her professional practice." [R. 1 at 8.] The Court understands the Defendants to be arguing that the "knowing and intentionally" qualifier applies only to "distribute and dispense," not "pursuant to prescriptions that were not issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his or her professional practice." *Id.* But indictments must be read practically and liberally. *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007). Such a reading supports a conclusion that the Indictment sufficiently alleges that the lack of authorization was knowing and intentional. The reasoning in *Ruan* bolsters that conclusion. The Court found the CSA's *mens rea* applies to the "except as authorized" clause even though the clause "does not immediately follow the scienter provision." *Ruan*, 142 S. Ct. at 2379. The same is true for the Indictment, as "pursuant to prescriptions that were not issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his or her

professional practice" does not *immediately* follow "knowingly and intentionally." [R. 1 at 8.] By reading the Indictment practically, liberally, and as the Supreme Court interpreted the statute, the "knowingly and intentionally" qualifier applies to the lack of authorization as well as the distribution. The Indictment is therefore sufficient under the heightened standard announced in *Ruan*.

**D**

Finally, the Defendants summarily ask the Court to judicially notice government publications and websites cited in its motion. [R. 256 at 5.] They do not specify which publications and websites they desire to be judicially noticed, nor do they present a legal argument in support of notice beyond citing cases establishing that government websites are routinely noticed. *Id.* The Defendants do list specific publications and websites to be noticed and an argument in support of notice in a separate motion to dismiss. [R. 267 at 20-24.] Accordingly, the Court will withhold ruling on this request until entering its Order resolving the other motion to dismiss, when the argument in favor of notice is properly before it.

**III**

Throughout this Motion to Dismiss, the Defendants characterize their conduct as merely physicians providing medical treatment. They seem to presume that because MAT is an approved practice, their application of the practice must have been lawful. But the Government did not bring this case alleging that the Defendants are guilty of the charged offenses simply by engaging in MAT. Rather, it claims their use of MAT was not medically necessary and outside the normal scope of practice. Whether the Government can prove as such is the province of the jury. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendants Taylor and Barnett's Motion to Dismiss **[R. 256]** is **DENIED**.

2. The other Defendants' Motions to Join the Motion to Dismiss and Reply in Support **[R. 273; R. 280; R. 283; R. 334; R. 338; R. 343]** are **GRANTED** to the extent they seek to join [R. 256] and [R. 324], but they are likewise afforded no relief.

This the 13th day of September, 2022.

Gregory F. Van Tatenhove
United States District Judge