UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Crim. No. 6:21-cr-00013-GFVT-HAI |
| v. | ) | |
| | ) | |
| ROBERT TAYLOR, LORI BARNETT, | ) | **MEMORANDUM OPINION** |
| KERI MCFARLANE, EVANN | ) | **&** |
| HERRELL, EVA MISRA, and MARK | ) | **ORDER** |
| GRENKOSKI, | ) | |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is before the Court on Motions to Sever filed by Defendants Taylor, Barnett, and McFarlane. [R. 260; R. 265; R. 403.] Each is largely based on constitutional issues presented by Dr. McFarlane's statements to law enforcement that allegedly inculpate her co-defendants. Dr. McFarlane and Ms. Barnett also present other grounds for severance. [R 265; R. 403.] Defendants Herrell, Misra, and Grenkoski move to join Dr. Taylor's Motion to Exclude or Sever and his Reply in support. [R. 270; R. 280; R. 283; R. 336; R. 338; R. 343.] Because the Motions are primarily based on the same issue, the Court will resolve them collectively. For the reasons stated below, the Motions to Join [R. 270; R. 280; R. 283; R. 336; R. 338; R. 343] are **GRANTED** but the Motions to Sever [R. 260; R. 265; R. 403] are **DENIED**.

**I**

This case was initiated in March 2021, when a grand jury indicted eleven defendants in a twenty-seven count Indictment. [R. 1.] Nine of the Defendants worked at EHC Medical Offices, a healthcare clinic in Tennessee. *Id.* at 8. The Indictment summarily alleges that the Defendants conspired "to make EHC appear as if it was functioning within the usual course of medical

practice," when, in truth, the Defendants were unnecessarily prescribing medicine and procedures, falsifying medical records, laundering money, and engaging in other illegal activities to further a scheme in pursuit of monetary gain.  [R. 1 at 11-40.]

Dr. Taylor and Ms. Barnett seek exclusion of statements by their co-defendants or, in the alternative, severance from the joint trial in this matter.[1]  [R. 260; R. 265.]  Dr. McFarlane also seeks severance.  [R. 403.]  These motions are primarily based on the Sixth Amendment's confrontation clause.  Dr. Taylor claims his co-defendants Keri McFarlane and Elmer Powers made statements that would violate the Confrontation Clause if admitted against him.  [R. 260 at 1.]  Ms. Barnett focuses on Dr. McFarlane's statements.  [R. 265 at 1.]  Finally, Dr. McFarlane moves for severance based on the issues presented by her own statements.  [R 403.]  Dr. McFarlane and Ms. Barnett also present other grounds for severance.  [R 265; R. 403.]

## II

The Court will first address the Confrontation Clause issue presented by each of the Movants.  Then, it will individually address the remaining arguments in each Motion.

## A

Each Motion is largely based on anticipated evidence that will allegedly violate the Confrontation Clause if admitted.  The Supreme Court's rulings in *Bruton* and *Crawford* address the interplay between the Fifth Amendment right to not testify at trial and the Sixth Amendment right to confront witnesses.  *Bruton* involved admission of one defendant's out-of-court confession that inculpated their co-defendant.  *Bruton v. United States*, 391 U.S. 123 (1968).  The Court held that admitting such a statement violates the inculpated defendant's right to cross-examination, even when the jury is instructed to only consider it as to the speaker.  *Id.* at 137.

---

[1] Defendants Herrell, Misra, and Grenkoski move to join Dr. Taylor's Motion to Exclude or Sever and his Reply in support.  [R. 270; R. 280; R. 283; R. 336; R. 338; R. 343.]  The Court will grant their Motions to Join.

2

The Court has multiple options to protect the non-confessing defendant's Sixth Amendment rights: (1) exclusion of the confession, (2) severance of the trial, or (3) redaction of the confession to avoid mention or obvious implication of the non-confessing defendant. *See Richardson v. Marsh*, 481 U.S. 200, 209 (1987).

*Crawford v. Washington* expanded this concept. 541 U.S. 36 (2004). The Supreme Court held that out-of-court *testimonial* statements can only be admitted if the declarant is unavailable and the defendant had a prior opportunity to cross examine the declarant. *Id.* at 68. So, the Confrontation Clause prevents admission of a co-conspirator's out-of-court testimonial statement even if it is covered by a hearsay exception. *Id.* A statement is "testimonial" if it was "made in circumstances in which a reasonable person would realize that it likely would be used in investigation or prosecution of a crime." *United States v. Headley*, 431 F.3d 484, 500 (6th Cir. 2005). Police interviews clearly fall in this category. *See Brentlinger v. Sheldon*, 2020 U.S. App. LEXIS 39045, at *8-9 (6th Cir. 2020).

Each Motion to Sever is largely based on Dr. McFarlane's statements. She spoke with law enforcement twice in 2016 and twice in 2019. [R. 403 at 3-5.] Dr. McFarlane states that her March 2019 interview "contains numerous statements . . . that inculpate other co-defendants." *Id.* at 5. Ms. Barnett argues that Dr. McFarlane "made numerous derogatory and incriminating statements about Ms. Barnett" in her September 2019 interview with the DEA. [R. 265 at 2.] She claims severance is the only appropriate remedy because the statements cannot be adequately redacted. *Id.* at 8. Dr. Taylor seeks exclusion of statements from Dr. McFarlane's September 2019 interview as well as a statement by Mr. Powers or, in the alternative, severance. *Id.* at 13-14. It appears Dr. Taylor's primary request is for the Government to "identify each statement it would seek to introduce" to determine whether each warrants exclusion or

severance.  *Id.* at 14.  Dr. McFarlane seeks severance from her co-defendants because she "<u>is</u> a *Bruton* issue."  [R. 403 at 1 (emphasis in original).]  She recognizes that she "cannot submit to this Court that any co-defendants have made negative statements about [her] that would create a *Bruton* issue for [her]."  *Id.* at 8.

The Government objects to all three Motions.  [R. 304; R. 441.]  In response to Dr. Taylor and Ms. Barnett, it argues that neither identified "specific statements that the *Bruton* rule would prohibit."  [R. 304 at 1.]  It claims that "the analysis and appropriate remedy, if any, turns on the character of the specific statements challenged."  *Id.* at 3.  Without specific statements implicating *Bruton* or *Crawford*, the Court cannot determine whether exclusion, redaction, or severance is the appropriate remedy.  *Id.*  The Government responds in the same manner to Dr. McFarlane's Motion, as well as arguing that she does not have standing to raise the constitutional rights of her co-defendants.  [R. 441.]  Ms. Barnett does identify specific statements, but the Government argues that none implicate *Bruton* or *Crawford* because they are not facially incriminating.  [R. 304 at 6-9.]

**1**

First, the Court addresses an issue raised by the Government's response to Dr. McFarlane's Motion.  The Government argues that Dr. McFarlane cannot move for severance based on "*other co-defendants'* Confrontation Clause rights."  [R. 441 at 3 (emphasis in original).]  Dr. McFarlane seeks severance from her co-defendants because she "<u>is</u> a *Bruton* issue."  [R. 403 at 1 (emphasis in original).]  She recognizes that she "cannot submit to this Court that any co-defendants have made negative statements about [her] that would create a *Bruton* issue for [her]."  *Id.* at 8.  She invokes the Court's significant discretion to sever criminal trials

4

and argues that the Confrontation Clause issue is one of many forms of prejudice which cumulatively warrant severance.  [R. 456.]

A defendant "lacks standing to assert the Sixth Amendment rights of [her] co-defendants." *United States v. Ramirez*, 50 Fed. App'x 257, 258 (6th Cir. 2002).  Therefore, Dr. McFarlane cannot argue that she is entitled to severance under *Crawford* or *Bruton* because her *own* testimony threatens her co-defendants' right to confrontation.  The Court recognizes that Dr. McFarlane presented this argument because "the efficient solution is to sever the problem, not sever[ing]" the many Defendants whose rights would allegedly be implicated in a joint trial.  [R. 456 at 4.]  Nevertheless, efficiency does not create standing.  Dr. McFarlane is not entitled to severance based on Confrontation Clause issues presented by her own statements.

## 2

Having resolved those initial issues, the Court now turns to the underlying conflict. Courts regularly deny motions raising Confrontation Clause issues that fail to identify specific co-defendant statements covered by *Crawford* or *Bruton*.  For example, one court denied a mortgage fraud defendant's motion to sever because she "cursorily" stated that one co-defendant accused her of inflating appraisals and speculated that other co-defendants may have also made inculpatory statements.  *United States v. Henley*, 2010 U.S. Dist. LEXIS 34967, at *10-11 (E.D. Mich. Apr. 9, 2010).  It found she did "not [meet] the burden of presenting specific facts which would support a finding of substantial prejudice" because she did not explain how the one specific statement she provided implicated her in the alleged mortgage fraud scheme.  *Id.* at *10. Similarly, *Floyd* denied a request for severance when the "actual statements of concern" were not put before the court.  *United States v. Floyd*, 2015 WL 2194790, at *9 (S.D. Ohio May 11, 2015); *see also United States v. Jones*, 2007 WL 712420, at *3 (E.D. Tenn. Mar. 6, 2007).

These courts are careful to leave the door open for conducting *in camera* review of the statements if the Government seeks admission at trial. *See, e.g.*, *Henley*, 2010 U.S. Dist. LEXIS 34967, at *11.

None of the Movants identified a specific co-defendant statement that warrants *Bruton* protection. Dr. Taylor does not identify any specific statements at all, let alone establish that they would be covered by *Crawford* or *Bruton*. His Motion merely alleges that in her September 2019 DEA interview, Dr. McFarlane made "many negative statements concerning [him] and EHC."[2] [R. 260 at 4.] Notably, he could have identified specific statements because he had access to the DEA interview report.[3] He also suggests statements by Mr. Powers implicate the Confrontation Clause but provides no specifics. *Id.* at 1, 5. With such little information, it is impossible for the Court to determine whether *Bruton* or *Crawford* is implicated and, if so, the appropriate relief. Accordingly, he has not satisfied his "burden of presenting specific facts which would support a finding of substantial prejudice." *Henley*, 2010 U.S. Dist. LEXIS 34967, at *10.

Dr. Taylor also does not identify any statements regarding the joined Movants, Drs. Herrell, Misra, and Grenkoski, nor did any of their Motions to Join. [R. 270; R. 280; R. 283.] The Confrontation Clause as interpreted in *Crawford* and *Bruton* is extremely individualized. A co-defendant's statement is only inadmissible if it incriminates another defendant on its face. *United States v. Alkufi*, 636 F. App'x 323, 334 (6th Cir. 2016). Without a statement *facially incriminating* a *specific* Defendant, no relief is warranted. Because Dr. Taylor did not identify

---

[2] Law enforcement interviewed Dr. McFarlane on four occasions. [R. 403 at 3-5.] Dr. Taylor only references her September 2019 interview. [R. 260 at 4.]

[3] The Government indicated that it "has voluntarily provided reports and recordings of interviews." [R. 304 at 4 n.1.] Even if the September 2019 interview report was not one of the reports or recordings the Government shared with the Defendants, it would have been in the record before Dr. Taylor's reply because Ms. Barnett attached the report as an exhibit to her Motion. [R. 265-1.] Dr. Taylor also failed to identify specific statements in his Reply. [R. 327.]

any statements inculpating Drs. Herrell, Misra, or Grenkoski, they obtain no benefit from joining his Motion. Dr. Herrell at least recognized that he could not rely on Dr. Taylor's Motion alone and stated that Drs. Cirelli and McFarlane "made statements about [him]." [R. 270.] This is plainly insufficient. As with Dr. Taylor, the Court does not have specific facts on which it can determine whether any statements about Drs. Herrell, Misra, and Grenkoski present Confrontation Clause concerns.

Ms. Barnett similarly claims that "McFarlane made numerous derogatory and incriminating statements" about her. [R. 265 at 8.] Unlike Dr. Taylor, she then identifies specific statements she believes warrant protection under *Crawford* and *Bruton*:

1. Ms. Barnett was "money oriented";

2. Ms. Barnett "ran EHC";

3. Ms. Barnett "made the decisions as to which patients were categorized as 'pain' or 'addiction,' the physicians had no say,";

4. Ms. Barnett decided to terminate Dr. McFarlane;

5. "Dr. Taylor and Ms. Barnett were 'on top'";

6. Dr. Taylor stated that Ms. Barnett was in charge, and;

7. Dr. Taylor and Ms. Barnett watched and listened to conversations through a camera system inside EHC.

*Id.* (citing R. 265-1). She states that each statement directly incriminates her and will likely be used at trial. *Id.* Further, she claims redacting the statements by replacing references to Ms. Barnett will not avoid the *Bruton* issue because her identity is clear. *Id.* The Government argues that none of these statements facially incriminate Ms. Barnett. [R. 304 at 7-10.]

The Court agrees that the statements do not present Confrontation Clause concerns because they are not facially incriminating. A confession is facially incriminating if it "obviously refer[s] directly to someone," and "involve[s] inferences that a jury could ordinarily make immediately." *Gray v. Maryland*, 523 U.S. 185, 196 (1998). In contrast, a confession that

7

is only incriminating "when linked with evidence introduced later at trial" is admissible with a limiting instruction because the "overwhelming probability" that the jury will be unable to comply with the instruction is diminished. *Richardson v. Marsh*, 481 U.S. 200, at 208 (1987).

Most of the statements Ms. Barnett identifies establish her role at EHC. While these statements "obviously refer directly to" her, they do not "involve inferences that a jury could ordinarily make immediately." *Gray*, 523 U.S. at 196. A jury presented with the fact that Ms. Barnett had significant responsibilities at the clinic would not immediately infer that she was engaged in criminal activity. Rather, this fact is only inculpatory when paired with proof that the clinic was a source of illegal conduct. Ms. Barnett recognizes as such, stating that her role is incriminating "in light of the Government's overarching view of this case." [R. 331 at 3.]

The same is true for the remaining statements. Dr. McFarlane's statements that Ms. Barnett was "money-oriented," fired Dr. McFarlane, categorized patients, and surveilled EHC employees do not lead to an immediate inference of criminal activity. Again, the jury would need to take additional steps to conclude that Ms. Barnett is guilty of a crime. None of the statements Ms. Barnett identifies present Confrontation Clause concerns, so exclusion, redaction, or severance is not warranted.

**3**

Ruling that no Movant identified a statement presenting Confrontation Clause concerns does not end the Court's inquiry because Dr. Taylor alternatively asks the Court to order the Government to disclose the statements it intends to use at trial. Federal Rule of Criminal Procedure 14(b) allows the Court to "order an attorney for the government to deliver to the court for in camera inspection any defendant's statement that the government intends to use as evidence" "before ruling on a defendant's motion to sever." This Rule provides "a procedure

8

whereby the issue of possible prejudice [presented by a co-defendant's statement or confession] can be resolved on the motion for severance." Fed. R. Crim. P. 14(b) advisory committee's note on 1966 amendment.

Courts deny requests for in camera review in the absence of specific statements suggesting Confrontation Clause concerns. For example, the defendant in *United States v. Jones* speculated that his co-defendant may have made a confession that could be admitted but did not identify the statement or even the speaker. 2007 WL 712420, at *3 (E.D. Tenn. Mar. 6, 2007). The court recognized that "severance might be appropriate if the Government intends to introduce into evidence a co-defendant['s] . . . statement, if such statement expressly implicates Defendant and if such co-defendant does not take the stand to permit cross-examination." *Id.* But without a specific statement, the "mere possibility of such evidence is speculative and insufficient." *Id.* The Court noted that if statements were presented to it, it could review them in camera or redact them. *Id.* But there was no "ripe Sixth Amendment concern" when the defendant failed to specify any statements. *Id.*; *see also United States v. Floyd*, 2015 WL 2194790, at *9 (S.D. Ohio May 11, 2015) (waiting until trial to review statements in camera because "actual statements of concern" were not put before the Court).

In this case, the Movants have not shown any "actual statements of concern" justifying the Court and Government expending resources on in camera review. *Floyd*, 2015 WL 2194790, at *9. Perhaps Dr. Taylor's position would be more compelling if he knew Dr. McFarlane provided statements to law enforcement and suspected she inculpated him but did not have access to the contents of the statements. However, the Government provided reports and recordings of interviews and the September 2019 interview report was in the record before Dr. Taylor filed his Reply. [R. 304 at 4 n.1; R. 265-1.] Like in *Floyd* and *Jones*, in camera review is

not warranted in the absence of specific statements presenting Confrontation Clause concerns,

especially when the Movants had access to the report listing Dr. McFarlane's allegations.  The

Court declines Dr. Taylor's request for in camera review.

**B**

**1**

Dr. Taylor suggests grounds for severance beyond his Confrontation Clause concerns.

None are sufficiently developed.  He references prejudice resulting from the existence of

exculpatory evidence that would be inadmissible in a joint trial, spillover evidence, "the

materially different allegations against Mr. Powers and Mr. Bunch," "antagonistic defenses"

between himself and Dr. McFarlane, and a risk of propensity evidence.[4]  [R. 260 at 9, 13-14.]  It

is not clear whether he is seeking severance on these grounds at this point because he suggests

the Government needs to identify the co-conspirator statements it intends to admit before "this

issue is ripe for the Court's review." *Id.* at 14.  In contrast, he says that "it is possible to already

know" that he will be prejudiced by trial with Mr. Powers.  His claim that he and Dr. McFarlane

have antagonistic defenses is based on an unidentified "statement produced in discovery." *Id.* at

13-14.

It appears that Dr. Taylor is aware of grounds allegedly supporting severance beyond

*Crawford* and *Bruton* but did not provide a legal argument.  He does not identify any potential

exculpatory evidence in reference to his citation to that standard. *See id.* at 9.  Similarly, he only

references a risk of prejudicial spillover evidence in a header. *Id.* at 13.  He also does not explain

how the allegations against him and Mr. Powers are "materially different" or why he and Dr.

McFarlane have such prejudicial antagonistic defenses that severance is warranted.  Finally, he

---

[4] Mr. Bunch pled guilty and will not be proceeding to trial.  [R. 233.]

10

summarily states that "the rules regarding prejudicial 'propensity' evidence similarly counsel in favor of severance" with no further explanation.[5]  *Id.* at 9.  "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).  Dr. Taylor did not present any developed argument establishing any grounds to sever his trial, so his Motion is denied.

## 2

Ms. Barnett claims she should be severed due to a risk of spillover evidence.[6]  [R. 265 at 4-6.]  Co-defendants may be severed from one another and tried in separate proceedings where substantial prejudice will result from a joint trial.  Fed. R. Crim. P. 14(a).  The Supreme Court interpreted Rules 8 and 14 to allow severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro v. United States*, 506 U.S. 534, 537 (1993).

Spillover evidence is evidence admitted against one defendant "that the jury should not consider against [another] defendant and that would not be admissible if [the other] defendant were tried alone." *Id.* at 539.  Spillover evidence can threaten a reliable judgment if admitted in a joint trial.  *Id.*  The mere existence of evidence that may have a spillover effect does not justify severance unless the defendant shows that it would prejudice her.  *United States v. Gallo*, 763

---

[5] The relevance of these rules to his Motion to Sever is unclear because propensity evidence can justify severing trials between counts, not between defendants.  *See* 25 Moore's Federal Practice – Criminal Procedure § 614.03 (2020) (discussing severance of *offenses*).

[6] Ms. Barnett also claimed that a joint trial would prohibit her from admitting exculpatory evidence: specifically, testimony from Dr. Taylor.  [R. 265 at 9-10.]  By prior Order, the Court denied this argument without prejudice because she did not provide required information but allowed her fourteen days to renew the Motion with proper detail.  [R. 393.]  She did not do so.

F.2d 1504, 1526 (6th Cir. 1985).  Prejudice exists if the jury will be unable to "separate and treat [the evidence] distinctively." *United States v. Swift*, 809 F.2d 320, 322 (6th Cir. 1987).  This showing must overcome the presumption that juries are "capable of following instructions regarding the sorting of evidence and the separate consideration of multiple defendants." *United States v. Mays*, 69 F.3d 116, 120 (6th Cir. 1995).

Ms. Barnett argues she will be prejudiced by a joint trial because, due to the "complexity and length of trial," a "grossly disproportional" "volume of irrelevant evidence [as to her]" will be presented.  [R. 265 at 10.]  The majority of her argument quotes or restates precedent.  The only *specific* claims she makes is that (1) she will suffer "guilt by association" because she and Dr. Taylor are life partners who have lived together as a family for eleven years" and (2) she will be prejudiced by evidence regarding prescribing practices at EHC because she could not issue prescriptions.  [*Id.* at 12; R. 331 at 5.]  She also suggests, through a parenthetical to a cited case, that there is a "serious discrepancy" between her and her co-defendants' charges.  [R. 265 at 12; R. 1 at 9-23.]  Finally, Ms. Barnett mentions that she and Dr. McFarlane "may have antagonistic defenses," with no further explanation.  [R. 265 at 5.]

Ms. Barnett provides more detailed argument than Dr. Taylor, but her motion is still insufficient and fails to show she is entitled to severance.  *See McPherson*, 125 F.3d at 995–96.  First, the Court cannot analyze many of her arguments because she provides insufficient details.  She does not clarify how she and Dr. McFarlane have "antagonistic defenses" beyond the Confrontation Clause issue.  [*See* R. 265 at 5.]  She also does not elaborate on her claim that she will suffer a spillover effect from being jointly tried with her "life partner."  *Id.* at 12.  The case she cites supporting severance based on that fact is inapposite.  *Id.* at 12 (citing *United States v. Harrison*, 2021 WL 1816895 (S.D. Ohio May 6, 2021)).  The *Harrison* court found that a

familial connection risked improper imputation of guilt and warranted severance "in light of the disparity of evidence and charges between" a stepfather and his stepson. 2021 WL 1816895, at *2. She faces no similar disparity.

Ultimately, Ms. Barnett is not entitled to severance because she is one of the primary players in the alleged scheme. She is charged in *all six* conspiracies and faces direct money laundering charges. [R. 1 at 9-23.] The only charge she does not share with her co-defendants is the single possession with intent to distribute charge against Mr. Powers. *Id.* at 10. Otherwise, she is directly implicated in each alleged conspiracy and shares the same direct money laundering charges as her co-defendants. Ms. Barnett attempts to distinguish herself from her co-defendants because she is a nurse, not a physician. [R. 331 at 5.] She claims much of the evidence presented will be on improper prescriptions, which is irrelevant to her because she could not issue prescriptions. *Id.* But that evidence is relevant to the overarching Controlled Substances Act conspiracy, which she is charged in, because it alleges a conspiracy to distribute narcotics pursuant to unauthorized prescriptions. [R. 1 at 10.] Even though she could not, and is not alleged to, have issued improper prescriptions, she could participate in a conspiracy to distribute narcotics pursuant to unauthorized prescriptions. Evidence focused on prescribing practices is relevant to Ms. Barnett because it is relevant to a conspiracy allegedly involving her. Ms. Barnett establishes no "compelling, specific, and actual prejudice" presented by a joint trial, nor explains why a limiting instruction would be insufficient. *See United States v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008). The Court denies her Motion to Sever.

### 3

Finally, Dr. McFarlane claims she is entitled to severance because (1) she has mutually antagonistic defenses with her co-defendants, (2) there is a risk of unfairly prejudicial spillover

evidence, (3) a joint trial will be impractical, and (4) she anticipates significant discovery disclosures making it impossible for her to be prepared for the January 2023 trial.  [R. 403 at 10-19.]  She emphasizes that the prejudicial impact of these issues should be viewed cumulatively.  The Government objects, claiming each of her arguments for severance is unfounded.  [R. 441 at 6-18.]

**a**

Dr. McFarlane argues that she should be severed because her defense is mutually antagonistic with those of her co-defendants.  [R. 403 at 10-13.]  Conflicting defenses among co-defendants do not necessarily warrant severance.  Charles Alan Wright & Arthur R. Miller, 1A Fed. Prac. & Proc. § 223 (4th ed.).  The Defendant must show that "an antagonistic defense would present a conflict so prejudicial that defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty."  *United States v. Fields*, 763 F.3d 443, 457 (6th Cir. 2014) (quoting *United States v. Warner*, 971 F.2d 1189, 1196 (6th Cir. 1992)).  Mere hostility between co-defendants or co-defendants attempting to inculpate each other does not justify severance.  *Id.*  Often, a limiting instruction can cure prejudice presented by antagonistic defenses.  *Id.* at 458.

Dr. McFarlane plans to claim she withdrew from the conspiracy.  [R. 403 at 11.]  She argues that a jury will not be able to square her position with that of her co-defendants, especially Dr. Taylor and Ms. Barnett, because she quit EHC, reported unlawful conduct to the FBI, and inculpated her co-defendants in interviews with law enforcement.  *Id.* at 12-13.  The Government argues she does not identify any specific prejudice that would result from a joint trial.  [R. 441 at 8-10.]

14

Even assuming Dr. McFarlane could establish a withdrawal defense, which the Government contests, the defense would not require severance. First, Dr. McFarlane does not identify an anticipated defense to which hers is antagonistic. Assuming her co-defendants argue that there is insufficient evidence to convict them, her withdrawal defense would not be antagonistic. Defenses are only antagonistic when one defendant's innocence is *solely* predicated on another's guilt. *United States v. Harris*, 9 F.3d 493, 501 (6th Cir. 1993). A jury could believe both that Dr. McFarlane withdrew from the conspiracy and that there is insufficient evidence to convict any co-defendant of the conspiracy. *See United States v. Anguilo*, 897 F.2d 1169, 1195 (1st Cir. 1990). Therefore, her defense does not *compel* a finding that her co-defendants are guilty. *Id.*

Many courts have denied motions to sever that argue conspiracy co-defendants are mutually antagonistic when one claims they withdrew. *See, e.g.*, *United States v. Ortiz*, 2013 U.S. Dist. LEXIS 147825 (N.D. Cal. Oct. 11, 2013); *United States v. Colon*, 1999 U.S. Dist. LEXIS 21681, at *18-20 (N.D. Ill. Jan. 8, 1999). The Sixth Circuit has also suggested that a defendant is not prejudiced when their co-defendant raises a withdrawal defense. *United States v. Hereford*, 162 Fed. App'x 439, 444 (6th Cir. 2006) ("Indeed evidence that certain members of the conspiracy had withdrawn from it might tend to show the tenuous nature of the overall conspiracy."). Ultimately, Dr. McFarlane believes she must be severed because she is pointing the finger at her co-defendants. But this is insufficient. *Fields*, 763 F.3d at 457 (quoting *Warner*, 971 F.2d at 1196 ( "The 'mere fact that each defendant points the finger at his co-defendant' is insufficient.")). Dr. McFarlane has not carried her burden of showing that the jury will unjustifiably infer guilt as to all defendants. *Id.*

**b**

15

Dr. McFarlane also alleges that she will be prejudiced in a joint trial because she was only employed at EHC for two years of the allegedly five-year conspiracy. [R. 403 at 13-16.] Her "position is that a majority of the allegations that form the basis of alleged criminal activity" occurred after she left EHC. *Id.* at 14. To support this position, she states that "the majority" of files reviewed by the Government's expert witness were from after she left. *Id.* She also claims the Indictment is structured in a way that shows she is less culpable than some of her co-defendants. *Id.* at 15. The Government objects, arguing that she identified no specific prejudicial spillover evidence and that her assertions about her participation in the conspiracy and the Government's evidence are misleading. [R. 441 at 10-14.]

Dr. McFarlane does not "point to specific 'substantial,' 'undue,' or 'compelling' prejudice" presented by spillover evidence in a joint trial. *Fields*, 763 F.3d at 457 (quoting *United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002)). Her "position" that the Government's evidence will be focused on years following her involvement in the conspiracy is speculative at best. The Government lists significant "potential trial evidence" regarding EHC's operation *before* she left. [R. 441 at 13.] A purely speculative claim that comparatively little evidence regarding her involvement will be admitted is insufficient to sever her from trial. Dr. McFarlane did not carry her burden of showing that a joint trial risks substantial, undue, or compelling prejudice from spillover evidence.

### c

Finally, Dr. McFarlane claims severance is warranted because (1) a joint trial in this matter will be too lengthy and complex for a jury to track properly and (2) delays in discovery disclosures make her unable to prepare for trial by January 2023. [R. 403 at 16-18.] The Court

rejected these arguments when Dr. Misra raised them. [R. 482.] First, it held that "this is not the rare case that is so complex that a jury cannot properly assess guilt." *Id.* at 7. Dr. McFarlane does not present a compelling reason why the Court's prior determination does not apply equally to her. The Court also found that delays in discovery disclosures did not uniquely prejudice any one defendant who is awaiting the disclosures. *Id.* at 10. Accordingly, the pending Motion to Continue, which Dr. McFarlane moved to join, is the appropriate venue for the Court to determine the discovery delay issue. [*See* R. 471; R. 477.]

### III

No Movant has shown a compelling reason to depart from the strong preference for jointly trying co-defendants. The Defendants will be able to request in camera review of statements presenting Confrontation Clause concerns and limiting instructions for spillover evidence if actual prejudice is presented at trial. But absent specific examples of constitutionally suspect statements or unduly prejudicial evidence, the Court will not sever trial. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Dr. Taylor's Motion to Exclude or Sever **[R. 259]** is **DENIED**;

2. Ms. Barnett's Motion to Exclude or Sever **[R. 265]** is **DENIED**;

3. Dr. McFarlane's Motion to Sever **[R. 403]** is **DENIED**;

4. Defendants Herrell and Grenkoski's Motions to Join **[R. 270; R. 336]** are **GRANTED**, but they are likewise afforded no relief.

5. Defendants Herrell, Misra, and Grenkoski's Motions to Join **[R. 280; R. 283; R. 338; R. 343]** are **GRANTED** to the extent they seek leave to Join Dr. Taylor's Motion [R. 260] or Reply [R. 327], but they are likewise afforded no relief.

This the 10th day of November, 2022.

Gregory F. Van Tatenhove
United States District Judge