UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Crim. 6:21-cr-00013-GFVT-HAI-1, 2, 3 |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ROBERT TAYLOR, LORI BARNETT, and | ) | **&** |
| EVANN HERRELL | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is before the Court on Magistrate Judge Ingram's Recommended Disposition of a motion to suppress filed by Defendants Lori Barnett and Robert Taylor. [R. 447; R. 264.] Co-Defendant Evann Herrell adopted the motion by leave of the Court. [R. 282; R. 294.] The motion asks the Court to suppress evidence derived from thirteen warrants, levying a series of broad attacks at their validity. Because all the warrants are valid, the Movants' Motion to Suppress **[R. 264]** is **DENIED**.

**I**

The United States charges eleven defendants with a total of twenty-seven counts, including conspiracy to unlawfully distribute controlled substances, conspiracy to falsify medical records related to a health care benefit program, and conspiracy to defraud Medicare and Kentucky Medicaid. [R. 1-1 at 9–10, 11–14, 15–17.] These allegations stem from the defendants' involvement with EHC, a medical facility "designed to combat the opioid epidemic" that was founded by Dr. Robert Taylor. *Id.*; [R. 190 at 1–2.] Ms. Barnett worked at EHC as a

registered nurse and as manager of EHC's administrative functions.  [R. 190 at 2.]  Dr. Herrell

was the medical director of EHC's Jacksboro, Tennessee location.  [R. 264-2 at 69].

Dr. Taylor founded EHC on January 11, 2013.  [R. 264-2 at 9.]  The Government alleges

that shortly after its inception, EHC physicians began prescribing large dosages of buprenorphine

combined with benzodiazepine, according to data collected by the Kentucky prescription

monitoring program.  [Salesforce Affidavit at 22 n.4.][1]  Buprenorphine is commonly used to

treat opioid addiction.  [R. 264-2 at 5.]  It is also a popular drug among addicts and is often

resold on the illicit street market.  *Id.* at 6.  The combination of buprenorphine and

benzodiazepine can be dangerous.  *Id.* at 13, 64.  But drug abusers use the combination to

achieve a more desirable high.  *Id.* at 6.

Because of these prescriptions, the Kentucky Attorney General and the DEA conducted a

joint investigation into EHC and its doctors.  *Id.* at 8.  The investigation revealed that EHC stored

patient data via Salesforce, a cloud-based software company specializing in customer

relationship management.  *Id.* at 17.  Authorities learned that Dr. Taylor and Dr. Herrell accessed

these records from devices at their homes.  *Id.* at 78-79, 81.  Thereafter, the Government

executed search warrants at both residences and seized computers and phones belonging to the

Movants.  [R. 263-2 at 2; R. 282 at 2.]  The Government then obtained a series of warrants to

search data contained on the devices and on various digital platforms.

Dr. Taylor and Ms. Barnett ask the Court to suppress electronic evidence seized pursuant

to thirteen of these warrants, and the Court granted Dr. Herrell leave to adopt their motion.  [R.

264; R. 282; R. 294; R. 447 at 3.]  Because the warrants mirror each other, they can be grouped

according to their similarities.  First, the Government obtained warrants to search Dr. Taylor and

---

[1] This Salesforce Affidavit is not currently in the record.  This Order requests the United States to file a copy of it in the record.

Ms. Barnett's residence on Spring Water Lane and Dr. Herrell's home on Moore Drive from Magistrate Judge Bruce Guyton.  [R. 447 at 3; R. 264-1 (Spring Water Lane warrant); R. 282-1 (Moore Drive warrant).]  Second, the Government received warrants to search EHC data stored via Salesforce.com.  [R. 447 at 11; R. 264-3 at 6–7.]  Third, authorities obtained warrants to search the Defendants' Gmail, Apple, and Yahoo accounts with matching items listed for seizure.  [R. 447 at 11; R. 282-3 at 7–8 (warrant for Drs. Taylor and Herrell's apple accounts); R. 305-1 at 7–8 (warrant for Yahoo account).]  Finally, investigators received five warrants to search the devices seized at the Movants' residences, each of which enumerates an identical list of items subject to seizure.  [R. 447 at 11; R. 305-4 (warrant authorizing search of Barnett's iPhone).]  Magistrate Judge Hanly Ingram signed the final three batches of warrants.

The motion to suppress the electronic evidence derived from these warrants is "broad, complicated, and at times difficult to decipher.  Many of the claims appear to have been raised purely to preserve arguments on appeal."  [R. 447 at 3.]  First, the Movants argue that the issuing judges insufficiently particularized the items enumerated for seizure to confine the Government's search to data that contained evidence of crimes.  [R. 325 at 1.]  Second, they raise concerns as to the protocol that investigators used to sort through the seized data.  *Id.* at 1–2.  Last, they claim that the processes through which the Government obtained permission to seize their data, such as administrative subpoenas, trash pulls, and IRS materials, failed in a variety of ways.  *Id.* at 2.

Magistrate Judge Ingram reviewed the motion and now recommends denial.  [R. 447.]  The Movants object to several of Judge Ingram's recommendations, so the Court reviews them *de novo*.  [R. 460]; 28 U.S.C. § 636(b)(1)(C).

## II

The Fourth Amendment guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Search warrants focus on places and things rather than persons, and the Supreme Court has clarified that the "critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 555–56 (1978); *see also United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016). To establish probable cause for a search, an affidavit accompanying a warrant must demonstrate (1) "the items sought are seizable by virtue of being connected with criminal activity"; and (2) "the items will be found in the place to be searched." *Church*, 823 F.3d at 355 (internal quotation marks and citation omitted).

When a defendant challenges a search made pursuant to a warrant, the reviewing court may only consider "the four corners of the affidavit" to determine whether probable cause supported the warrant. *United States v. Frazier*, 423 F.3d 526, 535 (6th Cir. 2005) (citing *United States v. Hatcher*, 473 F.2d 321, 324 (6th Cir. 1973)). The reviewing court affords "great deference" to an issuing judge's determination, although the issuing judge's discretion is "not boundless." *United States v. May*, 399 F.3d 817, 822 (6th Cir. 2005); *United States v. Czuprynski*, 8 F.3d 1113, 1116 (6th Cir. 1993). The touchstone is "whether there was 'a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place [to be searched].'" *United States v. Hill*, 27 F.4th 1155,

1191 (6th Cir. 2022) (quoting *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003)).

The Movants describe their arguments as "(1) whether the warrants were sufficiently particular and not overbroad; (2) when, by whom, and how the seized electronic devices, accounts, and information were searched relative to the warrants' terms; and (3) if the Government used legal process other than warrants to obtain evidence, what kind of process was used and when."  [R. 325 at 1.]

## A

First, all thirteen warrants are sufficiently particularized because the Government supported their warrant applications with allegations that a large conspiracy existed throughout EHC's existence.  One of the primary purposes of the warrant requirement is "to prevent general searches by requiring a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime has been committed." *Baranski v. Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco and Firearms*, 452 F.3d 433, 441 (6th Cir. 2006).  Courts frequently point to two issues regarding particularity.  "[O]ne is whether the warrant supplies enough information to guide and control the agent's judgment in selecting what to take; and the other is whether the category as specified is too broad in the sense that it includes items that should not be seized." *United States v. Richards*, 659 F.3d 527, 537 (6th Cir. 2011) (quoting *United States v. Upham*, 168 F.3d 532, 535 (1st Cir. 1999)).

As to the first inquiry, a warrant must enumerate the items for seizure with sufficient particularity to "enable the searcher to reasonably ascertain and identify the things which are authorized to be seized." *United States v. Savoy*, 280 F. App'x 504, 510 (6th Cir. 2008).  The degree of detail "is flexible and will vary depending on the crime involved and the types of items

sought." *United States v. Hanna*, 661 F.3d 271, 286 (6th Cir. 2011) (quoting *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001)).  A warrant need only be as specific as "the circumstances and the nature of the alleged crime permit." *United States v. Logan*, 250 F.3d 350, 365 (6th Cir. 2001).  Indeed, where an alleged criminal scheme is large, a warrant's phrasing can be more generic and still be sufficiently particularized. *United States v. Chaney*, 921 F.3d 572, 587–88 (6th Cir. 2019).  Courts review the affidavit supporting a warrant "in a commonsense, rather than hypertechnical manner." *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001).

As to the issue of overbreadth, "a warrant authorizing the seizure of a defendant's home computer equipment and digital media for a subsequent off-site electronic search is not unreasonable or overbroad, as long as the probable-cause showing in the warrant application and affidavit demonstrate a sufficient chance of finding some needles in the computer haystack." *United States v. Evers*, 669 F.3d 645, 653 (6th Cir. 2012).

Judge Ingram interprets the motion to suppress as raising both particularity issues, but he ultimately recommends denial.  [R. 447 at 7–10, 10–14.]  The Movants object to Judge Ingram's determination that the Government did not use "warrants that required the wholesale production of electronically stored information with no meaningful limits on subsequent review."[2]  [R. 460 at 4.]  Accordingly, the Court reviews *de novo* whether the warrants sufficiently cabined the Government's discretion as to what to seize and whether they were so overbroad that they

---

[2] The Movants also object to what they claim is an overly narrow reading of their motion by Judge Ingram.  [R. 460 at 5.]  They ask the "Court to find that their examples were representative, not exhaustive." *Id.*  This reads as a request for the Court to independently review each warrant in search of constitutional deficiencies.  However, "[j]udges are not like pigs, hunting for truffles buried in briefs." *Brenay v. Schartow*, 709 F. App'x 331, 337 (6th Cir. 2017) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).  "[I]t is not for the court to search the record and construct arguments." *Id.*  The Court will consider only the alleged issues with the warrants specifically identified in the Movants' briefing.

authorized seizure of data for which there was no probable cause relating to criminal activity. The Court considers each batch of warrants in turn.

## 1

The first set of challenged warrants concern the search of two residences in Tennessee and the subsequent seizure of electronic devices from the homes. Authorities seized Dr. Taylor and Ms. Barnett's iPhones and laptops from their residence on Spring Water Lane. [R. 263-2 at 2.] The Government seized Dr. Herrell's laptop from his home on Moore Drive. [R. 282 at 2.] The Movants allege two defects with these warrants. First, they complain that the warrants were overbroad because they authorized the government to examine all the data on their devices without limit, which implicates particularity. [R. 264 at 20.] Second, they question "whether any probable cause was coextensive with the seized electronic devices." [R. 325 at 7.]

The Court has already considered Dr. Taylor and Ms. Barnett's challenges to the Spring Water Lane warrant in a prior order along with a separate, related motion that also attacked that warrant. [R. 501.] Both the Spring Water Lane and the Moore Drive warrants contain identical guidance as to what items can be seized. [*Compare* R. 264-1 at 2 *with* R. 282-1 at 5.] Accordingly, the Court adopts its prior findings as to the particularity of the sections detailing the items to be seized for the Moore Drive warrant. [R. 501 at 9–12.] Neither warrant was facially overbroad.

On the second issue, the Court must consider anew whether the probable cause justifying the Moore Drive warrant was coextensive with the seizure of Dr. Herrell's laptop. Dr. Herrell acknowledges that the warrant to search his home, the Moore Drive warrant, authorized the seizure of "[a] computer (laptop, desktop or tablet) being used for EHC business activities[.]" [R. 282 at 2 ¶ 2.] Authorities applied for the Moore Drive warrant using the same affidavit that

supported the Spring Water Lane warrant.  [R. 282 at 2 ¶ 5; R. 264-2.]  So, the Court must consider whether that affidavit justified seizure of Dr. Herrell's laptop.  The Court reviews this argument *de novo* and looks only to the four corners of the affidavit.  *United States v. Frazier*, 423 F.3d 526, 535 (6th Cir. 2005) (citing *United States v. Hatcher*, 473 F.2d 321, 324 (6th Cir. 1973)).

Agent Sullivan's affidavit showed reason to suspect criminal activity at EHC, a connection to Dr. Herrell, and a nexus with a computer at Moore Drive.  *See United States v. Helton*, 35 F.4th 511, 518 (6th Cir. 2022 (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)) ("search warrant affidavit must establish a 'nexus between the place to be searched and the evidence sought.'")  Investigators learned from prescription monitoring databases and interviews with former patients that Kentucky residents drove to EHC's Tennessee locations, where they received high dosages of Suboxone.  [R. 264-2 at 11–12.]  EHC also frequently prescribed benzodiazepines such as Xanax and Klonopin along with Suboxone, a combination that investigators noted "seldom has a legitimate medical purpose."  *Id.* at 13.

The affidavit also detailed several EHC business practices that investigators found suspicious.  The investigation suggested that EHC charged its Kentucky patients cash for their office visits.  *Id.* at 14.  Yet, EHC's patients used Medicaid benefits to pay pharmacies for the prescriptions because several EHC doctors were approved providers under the Kentucky Medicaid program.  *Id.*  Dr. Taylor allegedly ordered an EHC doctor to endorse physical examinations performed by non-medical employees.  *Id.* at 19–20.  Ms. Barnett, despite not being a physician, allegedly had exclusive control over discharging patients who failed to comply with EHC's requirements.  *Id.* at 18–19.

Dr. Herrell was no stranger to these odd practices.  He worked as a physician at EHC and was an approved provider under the Kentucky Medicaid program.  *Id.* at 8, 14.  Based on state records, investigators learned that Dr. Herrell prescribed the second-highest amount of Suboxone to Kentucky Medicaid participants.  *Id.* at 15.  Of the top forty prescribers of Suboxone, only two were located outside of Kentucky: Dr. Herrell and another EHC physician.  *Id.*  Agent Sullivan alleged that Dr. Herrell signed prescriptions for patients who were seen by other EHC physicians.  *Id.* at 33.  When a patient cooperating with authorities went to EHC with a headache and fever, Dr. Herrell diagnosed the issue as "more viral than anything."  *Id.* at 45.  Then, after spending eighty seconds examining the patient's flu-like illness, Dr. Herrell provided the patient "with pre-filled and pre-signed prescriptions for Suboxone, Nuerontin, and Klonopin."  *Id.* Indeed, authorities allege Dr. Herrell issued prescriptions to patients without meeting them, using pre-filled forms that he signed prior to the patients' EHC visits.  *Id.* at 63.

The affidavit connected these unusual medical practices to the Moore Drive residence. Dr. Herrell was the medical director of EHC's Jacksboro, Tennessee location.  *Id.* at 69.  In 2018, the Government obtained a warrant for location information related to Dr. Herrell's cell phone.  *Id.* at 70.  That data indicated that the phone was near the Jacksboro EHC location during work hours and otherwise frequently near the Moore Drive residence.  *Id.* at 71.  The Government also determined that Dr. Herrell accessed EHC documents stored on the cloud with Salesforce from the Moore Drive residence.  *Id.* at 81.  Based on those logins, Agent Sullivan believed that "at least one computer [contained] information pertinent to this investigation" at the Moore Drive residence.  *Id.*

The Movants object to Judge Ingram's recommendation in part because the affidavit "does not specifically discuss computers in the possession of [the] Defendants."  [R. 460 at 7.]

9

They assert that the Government should have been able to better establish the link between their computers and the alleged offenses. *Id.* at 8. To the Movants, it was not sufficient for Judge Guyton to base the warrant off of an inference that "individuals who owned and managed [EHC] would use computers in doing so . . . ." *Id.* 7. This objection misapprehends the standard for finding probable cause to issue a warrant. Courts are "entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the crime and type of offense." *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008) (citing *United States v. Bethal*, 245 Fed. App'x 460, 465 (6th Cir. 2007)). "Probable cause exists where there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994).

As with the Spring Valley Lane warrant, Agent Sullivan's affidavit provided ample probable cause for Judge Guyton to allow authorities to seize Dr. Herrell's computer. [R. 501 at 6–12.] Judge Guyton based the Moore Drive warrant on an affidavit alleging that Dr. Herrell accessed remotely stored EHC data from his residence, establishing a fair probability that an electronic device would likely be found there containing information related to EHC. The warrant then authorized the seizure of "[a] computer . . . being used for EHC business activities." [R. 282-1 at 5.] Judge Guyton could make the simple inference that the computer would belong to Dr. Herrell. Therefore, sufficient probable cause existed in Agent Sullivan's warrant to "demonstrate a sufficient chance of finding some needles in the computer haystack." *Evers*, 669 F.3d at 653. Judge Ingram correctly denied Dr. Herrell's challenge to the Moore Drive warrant. Dr. Herrell's objection is overruled and Judge Ingram's proposed disposition is adopted as the opinion of the Court.

2

After seizing the Movants' devices from their homes, the Government obtained a second set of warrants to search the data within them.[3]  The Movants claim that these warrants were also overbroad.[4]  [R. 460 at 8.]  Judge Ingram reviewed the categories of items permitted for seizure and concluded that, while they are broad, the listed items were appropriate under the circumstances.  [R. 447 at 17.]  The Movants objected to Judge Ingram's proposed finding, so the Court reviews *de novo*.  [R. 460 at 8–10.]

All five warrants relied on a single affidavit from Agent Sullivan.[5]  [R. 447 at 15.] Based on that affidavit, Judge Ingram created a list of items within the devices' data that the Government could seize.  [*See* R. 282-2 (the list in the warrant for Dr. Herrell's laptop) *and* R. 447 at 15 (stating that this list is identical in all five warrants).]  Judge Ingram permitted the Government to seize "[a]ll records . . . that relate to violations of [distribution of controlled substances, the use of another person's registration number to distribute controlled substances, conspiracy to distribute controlled substances, Medicaid fraud, and conspiracy to commit Medicaid fraud] involving Robert E. Taylor, Lori M. Barnett, [and] Evann M. Herrell . . . since January 11, 2013 . . . ."  [R. 282-2 at 4.]  The warrant went on to specify items that fit the aforementioned general description, such as "EHC communications or records . . . relating in any

---

[3] This opinion examines the warrants in the order used by the Movants in their objections because the issues are cumulative therein.  But the chronological order of the warrants is: (1) the residential warrants, (2) the Salesforce warrants, (3) the email account warrants, and (4) the device warrants.  [*See* R. 264-2; R. 264-3; R. 263-1; R. 282-3.]

[4] As an initial matter, the United States had no obligation to obtain the second set of warrants that authorized a search of the seized devices' data.  The Government seized the devices pursuant to valid, prior warrants.  [*See* R. 501 25–28 (examining the Spring Water Lane warrant and the subsequent, second warrant to search the Ms. Barnett's devices).]  The Government did not need to obtain the second, data search warrants.  *Evers*, 669 F.3d at 652.

[5] These warrants authorized search of Dr. Herrell's laptop [R. 282-2 at 4–6 (portion of the application for the warrant)], Dr. Taylor's iPhone [R. 305-4 (warrant itself)], Ms. Barnett's laptop [R. 263-1 (portion of the application for the warrant)], and Ms. Barnett's iPhone [R. 263-5 (portion of the application for the warrant)].  Judge Ingram also signed a warrant to search Dr. Taylor's laptop.  [R. 447 at 15.]  Neither the Government nor Dr. Taylor filed that warrant in the record.

11

way to the issuance of prescriptions or billing for services[;]" "communications with pharmacies[;]" "[e]vidence relating to the collection, submission and/or billing of urine samples[;]" and "[e]vidence reasonably indicating the device user's state of mind as it relates to the crime under investigation." *Id.* at 4–6.

Judge Ingram found these descriptions to be reasonable under the circumstances. The Court agrees. While phrasing such as "relating in any way to the issuance of prescriptions" is quite broad, a warrant can use generic terms when the alleged scheme is large. *Chaney*, 921 F.3d at 587–88. The Government does not have to describe the items to be seized in the most specific manner that it is capable of at the time it applies for a warrant. *See id.* at 588. Rather, the Government can use broad phrasing to ensure that a warrant does not restrict investigators "to a far narrower group of files than the government had probable cause to seize." *Id.* When the alleged conspiracy is large, phrasing such as "records and documents 'relating to'" the alleged crime can be sufficiently particular. *Id.* at 587.

The Government alleges that the Movants took part in a large conspiracy to unlawfully distribute controlled substances dating back to 2013. [Salesforce Affidavit at 32.][6] And that conspiracy allegedly involved prescribing practices throughout EHC's existence. *See id.* at 32 n.4. So, from the issuing Magistrate Judge's perspective, vast amounts of EHC data could have related to the alleged crimes. It was therefore appropriate to permit the Government to request, and for Judge Ingram to permit, seizure of categories of items phrased in a general way. *See Chaney*, 921 F.3d at 587–88.

In their objections, the Movants point to two supposed failings of the device data warrants. First, they argue that the warrants failed to contain a date range sufficient to cabin the

---

[6] The device affidavits incorporate the information set forth in the Salesforce affidavit by reference. [*See e.g.*, R. 263-1 at 10.]

search of their data to times for which probable cause of criminal activity existed.  [R. 460 at 8.]
Second, they point to a particular item for seizure as being allegedly overbroad: the permission to
seize "[e]vidence reasonably indicating the device user's state of mind . . . ." *Id.* at 9.  As neither
contention has merit, the objections are overruled.

**a**

In their objections to Judge Ingram's findings, the Movants attempt to refine their
argument that the warrants did not sufficiently confine authorities to data for which there was
probable cause.  They point to a case where suppression was appropriate because a warrant failed
to restrict the Government to material within a particular date range.  [R. 460 at 6 (citing *United
States v. Lazar*, 604 F.3d 230, 238 (6th Cir. 2010)).]  Absent a date range, the Movants argue that
the Government was able to explore their data "with no meaningful limits on subsequent
review." *Id.* at 4.  The Movants renew this complaint several times as to the thirteen warrants,
but their issues remain consistent.[7]  *E.g., id.* at 10.

The Movants readily concede that the affidavits supporting the Salesforce warrants
contained a date range.  *Id.* at 8.  As Judge Ingram found, the affidavit for the warrants to search
the Movants' devices incorporated the facts laid out in the Salesforce warrant.  [R. 447 at 17; *see
e.g.*, R. 263-1 at 10.]  Specifically, the Salesforce affidavit states that EHC came into existence in
2013 and that suspicious activity began in 2013.  *Id.*  Judge Ingram found that the permissible
range for search was 2013 through April or May of 2019, when the warrants were executed.  *Id.*
While six years is a large span of time, Judge Ingram found it to be reasonable under the
circumstances, given that the Government alleged EHC engaged in criminal activity since its

---

[7] The Movants' objection to the date range issue appears as a part of the following arguments: processing of seized
data, the device warrants, and the email account warrants.  [R. 460 at 6, 8, 10.]  The issues are consistently: (1)
whether the affidavits in support of the warrants contain a date range by incorporation; and, if not, (2) whether the
lack of a date range renders the warrants overbroad.

founding.[8]  *Id.*  The Movants object to this proposed finding because the limiting date came from

an earlier affidavit (the Salesforce affidavit) incorporated into the device warrant affidavit by

reference.  [R. 460 at 8.]

If authorities are aware of the dates of criminal activity, failure to limit broad descriptive

terms in a warrant to those dates renders the warrant overbroad.  *United States v. Lazar*, 604 F.3d

230, 238 (6th Cir. 2010) (citing *United States v. Ford*, 184 F.3d 566, 576 (6th Cir. 1999)).  But

those dates can be incorporated into a warrant from the underlying affidavit.  *See id.* at 236

(seizure of medical records could have been limited to patients on a list presented to the

magistrate who issued the warrant).  Incorporation need not be express.  *Id.*  No magic words are

required.  *Id.*  And, contrary to the Movants' objection, an affidavit in support of a warrant can

incorporate facts alleged in an earlier affidavit by referencing it.  *United States v. Blakeney*, 942

F.2d 1001, 1024 (6th Cir. 1991).

The Movants' objection utterly fails.  Not only does it run against precedent, but it also

ignores the totality of the record.  The Government seized the devices pursuant to the Spring

Water Lane warrant and the Moore Drive warrant.  [*See* R. 501 25–28 (examining one such

initial warrant and a subsequent, second warrant to search the device).]  It had no obligation to

obtain the second, device-data search warrants.  *Evers*, 669 F.3d at 652.  And the original

warrants explicitly limited the subsequent search of data to records after January 11, 2013.  [R.

263-1.]

---

[8] Judge Ingram rejected several other arguments relating to the date range as insufficiently developed for review.  He rejected the proposition that the date range impermissibly included time after the sale of EHC because the underlying conspiracy remained ongoing.  [R. 447 at 18.]  Similarly, he disposed of an assertion that the Government impermissibly seized evidence after the Defendants had retained counsel as lacking any citation to authority.  *Id.*  The Movants object to these determinations but make no effort to bolster their arguments.  [R. 460 at 10 n.3.]  After review, the Court agrees with Judge Ingram.  "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

To the extent the subsequent warrants are relevant, Judge Ingram correctly concludes that the incorporation of the Salesforce warrant provides a limiting data range. *See Blakeney*, 942 F.2d at 1024. The limitation to data after January 11, 2013, was reasonable under the circumstance of investigating an alleged multi-year fraudulent scheme.[9] [R. 447 at 17.] The Movants' objection is overruled.

**b**

The Movants also object to Judge Ingram's finding that warrants' grant of permission to search their devices for evidence of their state of mind was not overbroad. [R. 460 at 9.] To do so, they point to the recent decision in *Ruan v. United States*, 142 S. Ct. 2370, 2377 (2022). That case concerned the state of mind that the Government must prove the Movants possessed to be convicted under 21 U.S.C. § 841. *Id.* at 2375. 21 U.S.C. § 841 criminalizes the knowing or intentional distribution of a controlled substance unless the distribution is authorized. *Id.* at 2374–75. The United States must now prove "beyond a reasonable doubt that the [Movants] knew that [they were] acting in an unauthorized manner, or intended to do so." *See id.* (requiring proof of knowing or intentional *mens rea* after defendants prove that they were authorized to distribute controlled substances).

The Movants argue that this decision renders two items enumerated in the device search warrants overbroad. First, the warrants authorize seizure of "[e]vidence indicating the user's communications and actions as they relate to the crimes under investigation." [R. 282-2 at 5; R. 460 at 9.] Second, they allow the Government to take any "[e]vidence reasonably indicating the device user's state of mind as it relates to the crime under investigation." [R. 282-2 at 5; R. 460

---

[9]The Movants renew their data range argument as to the email account warrants. [R. 460 at 10.] The affidavit in support of the email search warrants also incorporated the Salesforce warrant by reference. [*See e.g.*, R. 266-3 at 22–23.] Accordingly, the same analysis results.

at 9.]  Because *Ruan* requires the United States to prove that the Movants knowingly or intentionally distributed controlled substances in an unauthorized manner, the Movants argue that the reference to "crimes under investigation" morphs into a reference to their mental state generally.  [R. 460 at 9–10.]  In this way, the Movants claim that both the crimes under investigation and the state of mind items permit the Government to wade through massive amounts of data with little meaningful limitation on the scope of their search.

This argument holds no merit.  Some courts have held that warrants that authorize the seizure of all items related to a particular crime under investigation are overbroad.  *See United States v. Dickerson*, 166 F.3d 667, 694 (4th Cir. 1999).  For example, a warrant that allows authorities to search for vaguely defined crimes like fraud or conspiracy would be overbroad because it "provides no readily ascertainable guidelines for the executing officers as to what items to seize."  *Id.* (quoting *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992)).  By contrast a warrant that authorizes search for a specific criminal activity, such as "narcotics" or "theft of fur coats" would be sufficiently particular.  *Id.*

Contrary to the Movants' argument, the *Ruan* decision only adds specificity to the device search warrants rather than granting broad permission to investigate the Movants' state of mind.[10]  The *Ruan* decision clarifies that the Government must prove that the Movants "knew that [they were] acting in an unauthorized manner, or intended to do so."  *Ruan*, 142 S. Ct. at 2375.  In the context of the crime at issue, the term unauthorized manner has a highly technical meaning.  For a prescription of a controlled substance to be authorized, it "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice."  *Id.* at 2375 (quoting 21 CFR § 1306.04(a)).  Prior to *Ruan*, proving this

---

[10] The Court assumes that *Ruan* applies to the warrants only for the purposes of addressing the Movants' arguments. The Supreme Court issued *Ruan* years after the Government sought these warrants.

standard was "'often difficult to distinguish from the gray zone of socially acceptable . . .

conduct' (issuing valid prescriptions)." *Id.* at 2378 (quoting *United States v. Gypsum*, 438 US.

422, 441 (1978)).

But *Ruan's* "strong scienter requirement helps to diminish the risk of 'overdeterrence,'

*i.e.*, punishing acceptable and beneficial conduct that lies close to, but on the permissible side of,

the criminal line." *Id.  Ruan*, therefore, does not allow the Government to search for data as to

the Movants' state of mind generally.  Instead, it only permits the Government to search for

information that the Movants knew they were prescribing controlled substances not for a

legitimate medical purpose in the course of their practice.  In this way, the device warrants

allowed the Government to search for "evidence relating to the commission of a particular

crime" that "generates quite distinctive evidence" rather than a vague, undefined crime.  *See*

*Dickerson*, 166 F.3d at 694.

Neither the crime under investigation nor the state of mind item for seizure rendered the

warrants overbroad.  Accordingly, the Court agrees with Judge Ingram's proposed findings and

adopts them as the opinion of the Court.

**3**

Next, the Movants challenge three warrants to search their email accounts as being

insufficiently particular and overbroad.  [R. 447 at 20; R. 282-3 (warrant for Dr. Herrell's Apple

accounts); R. 305-1 (warrant for Dr. Taylor's Yahoo account).]  All three warrants contain the

same list of items permitted for seizure.  [R. 447 at 20.]  Judge Ingram determined that these

arguments mirror those levied against the device search warrants.  *Id.* at 21.  The Movants

challenge the list of items to be seized and the dates for seizure as overbroad. For similar

reasons, Judge Ingram recommends these challenges be denied.[11] *Id.* at 21–22.

Additionally, Judge Ingram notes that, even if the email warrants were overbroad, "the

remedy for warrant terms that allow for seizures unsupported by probable cause is to strike those

terms by the warrant and suppress any items seized under only those terms." *Id.* (citing *United*

*States v. Castro*, 881 F.3d 961, 965 (6th Cir. 2018)). He points to the Movants' failure to

"identify any warrant terms that permitted seizure of items for which there was no probable

cause." *Id.* at 22. Nor do they identify any data that was seized without proper cause. *Id.*

Accordingly, Judge Ingram recommends that the Court deny the challenge to the email warrants'

overbreadth as their request did not satisfy the burden required for relief. *Id.* at 22.

The Movants raise only one novel objection to Judge Ingram's recommended disposition.

They argue that "suppression may be the appropriate remedy when a warrant is overbroad and/or

insufficiently particular," citing a district court case from Kansas. [R. 460 at 10–11 (citing

*United States v. Irving*, 347 F. Supp. 3d 615, 624 n.41 (D. Kan. 2018)).] That case granted a

motion to suppress information derived from a search of a defendant's Facebook account.

*Irving*, 347 F. Supp. 3d at 623–24, 626. The Court found suppression to be an appropriate

remedy because the warrant was remarkably overbroad.[12] The government charged the

defendant with violating the Kansas Offender Registry Act by failing to register his Facebook

---

[11] The Movants object to this conclusion "for the same reason as they objected to the earlier findings." [R. 460 at 10.] The Movants' objections to these findings derive from the same grounds as those discussed earlier in this opinion. Accordingly, the Movants' objections are denied for reasons previously discussed.

[12] The *Irving* court also granted suppression because the parties failed to argue for severability of the warrant as an alternative to suppression. *Irving*, 347 F. Supp. 3d at 624 n.41. The court noted that its general practice would be to sever the valid part of the warrant and only suppress evidence derived under the improper part of the warrant. *Id.* But absent briefing from the parties, the Court declined to undertake that analysis. *Id.* Thus, contrary to the Movants' assertion, *Irving* is not authority that suppression is the appropriate remedy over severance in this case. [*See* R. 460 at 10 (objecting to Judge Ingram's determination that severance is the correct remedy).] Judge Ingram did consider severance as an option. [R. 447 at 21–22.]

account.  *Id.* at 623.  The warrant permitted authorities to search "virtually every aspect" of the account with no specified content or time limits.  *Id.* at 624.  The court found that the warrant permitted a general search of the defendant's Facebook account because it did not seek to cabin authorities to the two pieces of information relevant to the simple crime at hand: "that the Defendant was on Facebook and failed to register his account."  *Id.*

Even assuming a decision from the District of Kansas were controlling, the movants fail to advance any reason as to why they are similarly situated to the *Irving* defendant.  *See United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979) ("[I]t is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression.").  As Judge Ingram explains, the Movants do not point to any piece of evidence that demonstrates a particular violation of their rights.

Moreover, the email warrants are not nearly as broad as the Facebook warrant in *Irving*.  They contained both time and content limits.  Judge Ingram limited the email warrants to a search from 2013, EHC's inception, to the time of execution.  [R. 447 at 21.]  Rather than allowing the Government freedom to explore all personal data in the accounts, the email warrants targeted information related to EHC.  *Id.* at 20.  They enumerated items that were directly related to the controlled substances and Medicaid fraud charges, such as "EHC communications or records . . . relating in any way to the issuance of prescriptions or billing for services or procedures to any insurer" and "evidence relating to the collection, submission and/or billing of urine samples."  *Id.*  Simply put, the email warrants were as specific as "the circumstances and the nature of the alleged crime[s]" permitted.  *Logan*, 250 F.3d at 365.  The Movants objection is denied and Judge Ingrams' opinion is adopted as the opinion of the Court.

19

4

Judge Ingram also signed two warrants permitting the search of EHC's data stored on Salesforce.com.  [R. 447 at 22.]  The warrants contain identical lists of items for seizure.  *See id.*; [R. 264-3.]  Judge Ingram recommends that the Court deny the Movants' arguments as to these warrants.  [R. 447 at 23–24.]   He reasons that the Movants insufficiently developed their issues with the warrants for review, except for their discussion regarding the date range.  *Id.*  Because the Salesforce warrants are themselves the source of the date range, Judge Ingram applies the same reasoning to conclude the date limitation is reasonable.  *Id.*

The Movants object to Judge Ingram's opinion that they insufficiently developed their arguments.  They claim to have identified issues with the terms of the warrants.[13]  [R. 460 at 11.] Specifically, they argue that the Salesforce warrant included "all information associated with EHC, Dr. Taylor, and Ms. Barnett under 'Particular Things to be Seized.'"  *Id.*  But that is a misrepresentation of the terms of the Salesforce warrant.  Attachment A of the Saleforce warrant identifies the "Property to Be Searched."  [R. 264-3 at 3.]  That section contains the reference to information associated with EHC, Dr. Taylor, and Ms. Barnett.  *Id.*  Attachment B of the warrant lists the "Particular Things to Be Seized."  *Id.* at 4.  That section does not have a general reference to information associated with Dr. Taylor and Ms. Barnett, but it does have specific references to "patient records," "metadata . . . showing the dates and times any patient records were created," and the "means and source of payment . . . ."  *Id.*  The reference to information associated with Ms. Barnett and Dr. Taylor is acceptable because it identifies the accounts on

---

[13] The Movants also claim to have identified issues with the execution of the Salesforce warrants.  [R. 460 at 11.] That argument is covered in a subsequent discussion devoted to the Government's methodology for searching their data.

Salesforces's servers where evidence of crimes might be found.  After identifying the location to be searched, the warrant then identifies the items to be seized.

Ultimately, as Judge Ingram explains, the Movants have failed to point to any evidence that was seized without a showing of probable cause.  And for good reason.  The central defect in the Movant's reasoning is that they assume that a warrant that limits seizure to all EHC data relating to specified criminal activity has no limiting principal.  But the reference to EHC is a limiting principal.  The Government had probable cause to suspect that EHC was a criminal enterprise from its founding.  [R. 447 at 17 (citing information in an affidavit that red-flag KASPER data existed from 2013)]; *see also Chaney*, 921 F.3d at 587–88 (broad warrants are permissible where the underlying scheme is large).  Accordingly, the Movants' objection is overruled and Judge Ingram's recommended disposition is adopted as the opinion of the Court.

**5**

Judge Ingram also recommends that the Court deny the motion to suppress under the good-faith exception.  [R. 447 at 24.]  That exception allows admission of evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Paull*, 551 F.3d 516, 523 (6th Cir. 2009) (quoting *United States v. Leon*, 468 U.S. 897, 905 (1984)).  Authorities are only to disregard a warrant issued by a magistrate judge in the presence of exceptional circumstances.  *Evers*, 669 F.3d at 654.  Cases identify two such scenarios.  The good faith exception does not apply if "a warrant is 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . .'" *Id.*  The exception also does not apply if "a warrant is 'so facially deficient that it could not reasonably be presumed valid.'" *Id.*

The Movants agree that the warrants do not lack indicia of probable cause.  [R. 460 at 12.]  But they object to Judge Ingram's determination that the warrants were facially sufficient.  *Id.*  Their objection does not point to a specific problem on the face of the warrants.  Instead, they ask the Court to suppress evidence derived under the warrants "to deter the practice of allowing virtually unlimited governmental intrusion into the wealth of private information contained in electronic devices and email accounts."  *Id.*

The Court declines to resort to the extreme remedy of suppression.  *See United States v. Beals*, 698 F.3d 248, 268 (6th Cir. 2012) (blanket suppression of all evidence due to an allegedly impermissible general search is an extreme remedy).  For suppression to be warranted, a warrant's facial deficiency must be so evident that no reasonable officer could presume it to be valid.  *United States v. Lazar*, 604 F.3d 230, 238 (6th Cir. 2010).  As described at length above, each series of warrants contained detailed lists of items for seizure pertaining to EHC.  And authorities established probable cause of criminal activity dating to EHC's founding.  This is not a case where warrants blatantly authorized seizure of items that officials knew had not been presented to the magistrate judge.  *Cf. id.* (suppression appropriate for records of patients whose names did not appear on a list presented to the issuing Magistrate Judge).  The Government asked permission to seize a wide range of documents, and the issuing magistrate approved the request.

The Movants' objection to Judge Ingram's recommended application of the good-faith exception does not point to any new facial deficiencies that were not named elsewhere in their filing.  [*See* R. 406 at 11–12.]  And the Court has dismissed the specific deficiencies that the Movants allege as to each warrant.  Accordingly, the Movants have established no basis on which the warrants are facially deficient.  Given their concession that the warrants do not lack

for indicia of probable cause, the good-faith exception applies.  Judge Ingram's recommended

disposition is adopted as the opinion of the Court, and the Movant's request for suppression is

denied.

### B

The Movants next argue that the forensic procedure that the Government used to sort

seizable data from constitutionally sensitive data on their devices might have lacked

"information to guide and control the agent's judgment in selecting what to take."  [R. 325 at 4.]

During a teleconference with Judge Ingram, the Movants described their argument as

> essentially all of Dr. Taylor and Ms. Barnett's electronic communications over a
> period of at least five years were seized by the Government.  And there was a period
> of several years in which the government . . . was processing that information.  So,
> there are issues that . . . are evidentiary in nature, which are essentially: How was
> the information processed?  In other words, what forensic techniques were used?
> Was there any effort to restrict the examination to information for which there was
> probable cause?

*Id.* at 8.  Dr. Herrell also challenges the "virtually limitless searching" of his data.  [R. 282 at 3 ¶

9.]  The Movants requested an evidentiary hearing to allow them to question the Government as

to how their data was processed.  [R. 325 at 1.]

Judge Ingram recommends that the Court deny the motion to suppress.  Judge Ingram

summarizes his reasoning as "even assuming the government used poor forensic techniques for

processing the seized data, the defense has provided no authority that suppression should

follow."  [R. 447 at 9.]  Because the law does not support suppressing evidence obtained using

improper forensic techniques, Judge Ingram sees no need to conduct an evidentiary hearing into

the methods used by the Government.  *Id.*

This conclusion rests on an incorrect premise.  The Sixth Circuit has recognized that

some forensic technique employed to sort seizable information from constitutionally protected

23

material might offend the Fourth Amendment.  *See United States v. Richards*, 659 F.3d 527, 539 (6th Cir. 2011).  To comply with the Fourth Amendment, warrants must describe any items to be seized with sufficient particularity "to prevent the seizure of one thing under a warrant" that in fact describes some other item.  *United States v. Wright*, 343 F.3d 849, 863 (6th Cir. 2003).  Searches of data contained in computers present a unique challenge under the Fourth Amendment.  *See generally United States v. Richards*, 659 F.3d 527 (6th Cir. 2011).  Computers hold so much personal data that a warrant authorizing the search of digital files for contraband presents "a far greater potential 'for the "intermingling" of documents and a consequent invasion of privacy'" than a traditional search of a person's home.  *United States v. Lucas*, 640 F.3d 168, 178 (6th Cir. 2011) (quoting *United States v. Walser*, 275 F.3d 981, 986 (10th Cir. 2001)).

Yet, courts generally uphold the practice of seizing a computer and only later searching it to separate the data authorized for seizure and the information into which the Constitution forbids the Government from intruding.  *See United States v. Evers*, 669 F.3d 645, 653 (6th Cir. 2012).  "[A] warrant authorizing the seizure of a defendant's home computer equipment and digital media for a subsequent off-site electronic search is not unreasonable or overbroad, as long as the probable-cause showing in the warrant application and affidavit demonstrate a sufficient chance of finding some needles in the computer haystack."  *Id.*  The practice is necessary "[b]ecause of the technical difficulties of conducting a computer search in a suspect's home . . . ."  *Id.* (quoting *Guest v. Leis*, 255 F.3d 325, 335 (6th Cir. 2001)).  "[T]he federal courts have rejected most particularity challenges to warrants authorizing the seizure and search of entire personal or business computers."  *Richards*, 659 F.3d at 539.

Even so, authorities do not have carte blanche to wade through everything on a device once seized.  The review of computer data must be tailored to locate the items specified in the

24

warrant. *Id.* at 539 (discussing *United States v. Burgess*, 576 F.3d 1078 (10th Cir. 2009)). Federal courts do not require the Government to employ any specific search protocol. *Id.* at 538. Instead, courts evaluate the reasonableness of a computer search on a case-by-case basis. *Id.* To properly honor the Fourth Amendment's privacy concerns, the best practice is "to first look in the most obvious places and as it becomes necessary to progressively move from the obvious to the obscure." *Id.* at 539 (quoting *Burgess*, 576 F.3d at 1092).

Ideally, authorities should use "a search protocol which structures the search by requiring an analysis of the file structure, next looking for suspicious file folders, then looking for files and types of files most likely to contain the objects of the search by doing keyword searches." *Id.* (quoting *Burgess*, 576 F.3d at 1092). "But in the end there may be no practical substitute for looking in many (perhaps all) folders and sometimes at the documents contained within those folders . . . ." *Id.* (quoting *Burgess*, 576 F.3d at 1092). The Government is permitted to cursorily glance at seemingly innocuous files to confirm whether they hide contraband. *Id.* The Government can go so far as to examine the entire contents of a computer system to look for evidence, so long as the data ultimately seized by authorities is limited to "evidence explicitly authorized in the warrant." *Id.* at 540.

The Movants object to two issues concerning protocols used by the Government. First, they point to the method authorities used to obtain their Salsesforce data. [R. 460 at 11.] Second, they levy vague concerns with the methodology that the Government employed to sort through all of their data after it was seized.

As to the Salesforce warrants, they claim that the method of execution was defective because the warrant gave Salesforce the option of providing authorities with a remote log in to the Movants' data, presumably as an alternate to Salesforce sending the data to the Government.

*Id.*  They argue that a direct login to their data would give authorities access to all of their data, with no limiting principal other than the direction that information permitted for seizure was "connected to the alleged offenses since 2013."  [R. 264 at 18.]  The Movants claim that "[a] warrant's enumerated list of 'things to be seized' is meaningless if the Government has direct log-in access and credentials for the data . . . ."  [R. 460 at 11.]

However, the Sixth Circuit has recognized that the Government can, in some cases, examine the entire contents of a computer system to look for evidence, so long as the data ultimately seized by authorities is limited to "evidence explicitly authorized in the warrant." *Richards*, 659 F.3d at 540.  So, the list of things to be seized is not meaningless.  Instead, the issue is whether the Government, during its exploration of the system, ultimately seized something which it did not have permission from Judge Ingram to take.  The Movants have not identified any such violation, so they are not entitled to suppression.  *See United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979) ("[I]t is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression.").

Similarly, the Movants do not point to any particular protocol used after the Government obtained their data that warrants suppression.  Indeed, the basis for their hearing request is that they wish to inquire into the methods that the Government used.  But it is unclear to the Court that any protocol ultimately disclosed would warrant suppression.  *Richards* acknowledged that some searches may require the Government to open and initially review every single file on a system.  If authorities can universally search a system to sort contraband from private information, the Movants need to allude to more than vague concerns to suggest that suppression is an appropriate remedy.  *See id.* ("[I]t is well settled that in seeking suppression of evidence the

burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression.").

The Movants argue that the search of their devices is akin to the search in *United States v. Rarick*. [R. 325 at 5.] In that case, the Sixth Circuit distinguished the whole system search permitted in *Richards*. *United States v. Rarick*, 636 F. App'x 911, 915 (6th Cir. 2015). The Government had probable cause to justify searching for a very narrow category of evidence, a video or image taken by the defendant at the time of his arrest. *Id.* However, the warrant allowed forensic investigators to search broadly through his phone to find that evidence, including through all his GPS data. *Id.* Accordingly, unlike in *Richards*, opening every file was not necessary. *Id.* Authorities needed a universal search in *Richards* because "the agents did not know how, where, or in what quantity the evidence would be stored . . . ." *Id.*

*Rarick* is unavailing to the Movants. As established at length, investigators in this case had probable cause to believe that a massive amount of data relating to the alleged crimes would be found in the Movants' devices, email accounts, and Salesforce accounts. So, investigators had far more reason to comb through their data at large. The issue is not whether the search method permitted authorities to see too much of EHC's data. The Government alleges that EHC was a criminal scheme from its founding. Instead, the issue is whether the methodology permitted authorities to do more than peek at non-EHC data to confirm that it did not hide relevant evidence. *See Richards*, 659 F.3d at 539.

The Movants claim that they need an evidentiary hearing to find such a violation. But, to merit an evidentiary hearing, a defendant must offer better justification for suppression than conclusory statements. *United States v. Schumacher*, 611 Fed. App'x 337, 341 (6th Cir. 2015). Evidentiary hearings are not a substitute for discovery. *Id.* They are not an opportunity to

cross-examine the Government in hopes of finding redressable error.  *Id.*  Blanket challenges to digital search methodology do not merit an evidentiary hearing.  *Id.* at 340.  The Movants have not pointed to any method used by the government that was improper.  Therefore, they have met neither the burden required to merit an evidentiary hearing nor to suppress evidence derived using these search techniques.  Judge Ingram correctly dismisses this argument as a fishing expedition.  [R. 447 at 9.]  The objection is overruled and Judge Ingram's recommended disposition is adopted as the opinion of the Court.

### C

The movants also, by their own admission, raised several arguments as good faith extensions of law for the purposes of preservation for appeal.  [R. 460 at 4.]  These arguments focus on the legal process used by the Government to collect their data.  [R. 325 at 2.]  The Court considers each in turn.

### 1

The Movants assert that the magistrate judges who issued several of the warrants exceeded their jurisdiction.  [R. 264 at 2.]  They base this theory on the jurisdictional limits defined by Federal Rule of Criminal Procedure 41(b) and 28 U.S.C. § 636 (The Federal Magistrate Judge Act).  *Id.* at 14–16.  Generally, magistrate judges may authorize the search and seizure of property located within their district.  Fed. R. Crim. P. 41(b)(1).  The rules of procedure only extend magistrates' authority beyond their district in discrete instances.  *Id.* 41(b)(1)–(6).

The Movants claim these warrants reached beyond the magistrates' physical jurisdiction by authorizing the search of items located outside of the geographic boundaries of the magistrates' districts.  [R. at 15.]  Their motion does not clearly articulate which warrants

overreached nor where the alleged out of district items were located. *See id.* at 14–17. Judge Ingram interpreted the challenge as relating to "electronic information stored in another jurisdiction (such as the email accounts and Salesforce data) . . . ." [R. 447 at 5.]

Some courts hold that the Stored Communications Act permits magistrates to issue warrants for information located out of their districts. *United States v. Bansal*, 663 F.3d 634, 662 (3d Cir. 2011). The Movants disagree with these courts. The SCA allows the Government to require "a provider of remote computing services to disclose" information "without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . . ." 18 U.S.C. § 2703(b)(1)(A). The Movants claim that this reference to the rules of procedure imports the geographic limitations on magistrates' authority into the SCA. [R. 264 at 16–17.] They seek suppression of data seized under extra-territorial warrants because "[a] search warrant issued by a person who lacks authority to issue it is void as a matter of law."[14] *Id.* at 14.

However, courts that have considered the SCA's jurisdictional component apply the canon of statutory interpretation that avoids rendering "a word or phrase redundant or meaningless." *United States v. Berkos*, 543 F.3d 392, 396–97 (7th Cir. 2008). The SCA permits the Government to "require a provider of remote computing service to disclose" information if the Government obtains a warrant from a federal district court or magistrate judge that "has jurisdiction over the offense being investigated." 18 U.S.C. §§ 2703(b)(1), 2711(3). Alternatively, a district court can issue a warrant for disclosure if it sits in the district in which the electronic service provider is located. *Id.* §§ 2703(b)(1), 2711(3)(A)(ii). The Movants'

---

[14] This conclusion is suspect. Some courts that have considered the issue do not consider suppression to be an appropriate remedy for a warrant issued in violation of Rule 41. *See United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008) (suppression inappropriate remedy for violation of federal rules of procedure if evidence was seized on the basis of probable cause and with advanced judicial approval).

interpretation of the SCA would render the statute's distinction between courts with jurisdiction over the offense and courts that are geographically coincident with a service provider a nullity. Importing Rule 41's geographical bounds would make these two potential courts, in reality, one and the same.

Instead, the circuit courts to consider the issue hold that "when 'a court with jurisdiction over the offense' issues an out-of-district warrant for the seizure of electronic communications, it must do so 'using the procedures described in the Federal Rules of Criminal Procedure.'" *Berkos*, 543 F.3d at 397.  And the geographic requirement set forth in Rule 41(b) is a substantive provision, not a procedural one.  *Id.*  The better reading of the SCA is that it specifically refers to the procedural elements of Rule 41 only.  *Id.* at 398.  Accordingly, Rule 41 influences the SCA only as to the specific methods of issuing warrants, not as to the issuing court's jurisdiction.  *Id.* Because "Rule 41(b) deals with substantive judicial authority—not procedure," it does not apply to the SCA.  *Id.*; *accord United States v. Ackies*, 918 F.3d 190, 201 (1st Cir. 2019); *United States v. Loera*, 24 F.4th 144, 158 (2d Cir. 2022).  Thus, the SCA does permit magistrate judges to issue warrants for electronic communications stored outside of their districts.

Judge Ingram rejects the Movants' arguments because they "concede that case law is not currently on their side; magistrate judges may issue SCA warrants for data held outside their judicial district."  [R. 447 at 6.]  The Movants object to this proposed finding, despite the fact that they again "concede that case law is not currently on their side . . . ."  [R. 460 at 4.]  Instead, they ask the Court "to allow them to preserve the issue for potential appeal."  *Id.*  Because the Movants have conceded the issue, the Court adopts Judge Ingram's disposition.

**2**

The Movants also moved to suppress materials that the Government seized under a variety of non-warrant mechanisms, such as subpoenas, trash pulls, IRS materials, and "miscellaneous other items." [R. 264 at 2; R. 447 at 6.] Again, these arguments "were 'raised for preservation purposes and/or good faith extensions of law.'" [R. 447 at 7 (quoting R. 325 at 3).] Judge Ingram recommended denying the motion because the "Defendants cannot point to controlling law supporting their position on these issues . . . ." *Id.* The Movants did not object to this aspect of Judge Ingram's disposition.

Generally, this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections are made. 28 U.S.C. § 636(b)(1)(c). But, when no objections are made, as in this case, the Court is not required to "review… a magistrate's factual or legal conclusions, under a de novo or any other standard." *See Thomas v. Arn,* 474 U.S. 140, 151 (1985). Parties who fail to object to a magistrate judge's report and recommendation are also barred from appealing to a district court's order adopting that report and recommendation. *United States v. Walters,* 638 F.2d 947, 950–51 (6th Cir. 1981). Nevertheless, the Court has examined the record and agrees with Judge Ingram's recommended disposition. The Movants provide no authority that the use of non-warrant mechanisms to obtain their data merits suppression, and the Court is otherwise unaware of any reason to justify suppression. [*See* R. 447 at 7.] The Movant's motion to suppress information derived from non-warrant procedures is denied.

**3**

The Movants object to several terms that Judge Ingram uses in his recommended disposition. [R. 460 at 3.] Judge Ingram references "pain-pill diversion" and "the Government's

31

'theory that EHC was a sham pill mill.'" *Id.* (quoting R. 447 at 17).  Instead, the Movants prefer to describe EHC as prescribing "medications formulated with deterrent properties to block rewarding effects of opioids and trigger withdrawal if injected."  *Id.*  Because these terms are immaterial to the substance of Judge Ingram's opinion, the Movants' objection is noted but overruled.

### III

The affidavits in support of all thirteen warrants contain ample probable cause to allege that EHC engaged in criminal activity since its inception.  The Movants' numerous issues with the phrasing of the warrants ultimately fail because the Government does not have to describe the items to be seized in the most specific manner that it is capable of at the time it applies for a warrant.  *See United States v. Chaney*, 921 F.3d 572, 588 (6th Cir. 2019).  Rather, the Government can use broad phrasing to ensure that a warrant does not restrict investigators "to a far narrower group of files than the government had probable cause to seize."  *Id.*  Given the United States' detailed theory that EHC was always involved in criminal activity, the warrants were sufficiently particularized.

Because all thirteen warrants were valid, there is no violation of the Movants' Fourth Amendment rights.  Under these circumstances, suppression of the data derived from the searches is inappropriate.  Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1.  The Movants' Objections **[R. 460]** are **OVERRULED**,

2.  Judge Ingram's Report and Recommendation **[R. 447]** is **ADOPTED** as and for the opinion of the Court;

3.  Defendants Lori Barnett and Robert Taylor's Motion to Suppress **[R. 264]** is **DENIED**;

4.   Defendant Evann Herrell is likewise afforded no relief;

5.   The United States is **ORDERED** to file a copy of the affidavit in support of the

Salesforce warrants in the record.

This the 12th day of December 2022.

Gregory F. Van Tatenhove
United States District Judge